UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:11-cv-24505-KAM

---

IN RE: FABRIZIO DULCETTI NEVES

FABRIZIO DULCETTI NEVES,

Appellant,

vs.

MARKWOOD INVESTMENTS, LTD.
and GOLDEN DAWN CORPORATION,

Appellees.

---

## APPELLANT'S INITIAL BRIEF

---

On Appeal From The United States Bankruptcy Court
Southern District of Florida, Miami Division

---

Paul J. Battista, Esq.
Florida Bar No. 884162
David C. Cimo, Esq.
Florida Bar No. 775400
Carlos E. Sardi, Esq.
Florida Bar No. 781401
Joshua R. Alhalel, Esq.
Florida Bar No. 0016320
Michael L. Schuster, Esq.
Florida Bar No. 0057119
GENOVESE JOBLOVE & BATTISTA, P.A.
*Counsel for Fabrizio Dulcetti Neves, Appellant*
100 Southeast Second Street, 44th Floor
Miami, Florida 33131
Tel: (305) 349-2300
Fax: (305) 349-2310

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................... ii

PREFACE .................................................................................................................................... v

STATEMENT OF BASIS OF APPELLATE JURISDICTION ..................................................... 1

STATEMENT OF ISSUE PRESENTED ON APPEAL .............................................................. 1

STANDARD OF REVIEW ......................................................................................................... 1

STATEMENT OF THE CASE AND FACTS ............................................................................. 1

SUMMARY OF ARGUMENT ................................................................................................... 5

ARGUMENT ............................................................................................................................. 8

    I.    THE BANKRUPTCY COURT CANNOT ENTER A MONEY JUDGMENT ON
        PLAINTIFFS' UNDERLYING STATE LAW CLAIMS UNDER SECTION 523 OF THE
        BANKRUPTCY CODE. .................................................................................................. 8

    II.   THE BANKRUPTCY COURT LACKED SUBJECT MATTER JURISDICTION OVER
        THE ADVERSARY PROCEEDING. ............................................................................. 16

CONCLUSION ....................................................................................................................... 24

REQUEST FOR ORAL ARGUMENT ..................................................................................... 24

CERTIFICATE OF SERVICE .................................................................................................. 25

# <u>TABLE OF AUTHORITIES</u>

Page(s)

## CASES

*A.M.S. Printing Corp. v. Wernick (In re Wernick)*,
242 B.R. 194 (Bankr. S.D. Fla. 1999)................................................................. 18, 22

*Bell v. Fin. Guild of Am. (In re Bell)*,
28 B.R. 9 (9th Cir. B.A.P. 1983)........................................................................ 15

*Celotex Corp. v. Edwards*,
514 U.S. 300 (1995)........................................................................................ 6

*Conn. Nat'l Bank v. Germain*,
503 U.S. 249 (1992)........................................................................................ 9

*Continental Nat'l Bank v. Sanchez (In re Toledo)*,
170 F.3d 1340 (11th Cir. 1999)........................................................................ 17

*Cowen v. Kennedy (In re Kennedy)*,
108 F.3d 1015 (9th Cir. 1997) ......................................................................... 12, 14

*Fidelity & Deposit Co. of Maryland v. Morris (In re Morris)*,
950 F.2d 1531 (11th Cir. 1992) ........................................................................ 1, 19, 20

*Guerin v. Weil, Gotschal & Manges*,
205 F. 2d 302 (2d Cir. 1953)............................................................................ 15

*Hall v. Davenport*,
76 F.3d 372 (4th Cir. 1996) ............................................................................. 12

*Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*,
530 U.S. 1 (2000)........................................................................................... 9

*In re Antonelli*, No. 09-1013,
2011 WL 5509494 (Bankr. D.R.I. Nov. 10, 2011) .............................................. 12, 14

*In re Cambio*,
353 B.R. 30 (B.A.P. 1st Cir. 2004) ................................................................... 10, 11, 12

*In re Chase & Sanborn Corp.*,
904 F.2d 588 (11th Cir. 1990) ......................................................................... 1

*In re Dillon*,
194 B.R. 533 (Bankr. S.D. Fla. 1996)............................................................... 15, 21

*In re Happy Hocker Pawn Shop, Inc.*,
212 Fed. Appx. 811 (11th Cir. 2006)................................................................ 17, 18

*In re Losanno*,
291 B.R. 1 (Bankr. D. Mass. 2003) ................................................................. 11

*In re Riebesell*,
586 F.3d 782 (10th Cir. 2009) ......................................................................... 12, 14

*In re Seven Seas Petroleum, Inc.*,
522 F.3d 575 (5th Cir. 2008) ........................................................................... 1

*In re Thrall*,
196 B.R. 959 (Bankr. D. Colo. 1996) ............................................................... 10, 11, 12

*In the Matter of Fesco Plastics Corp, Inc.*,
996 F. 2d 152 (7th Cir. 1993) .......................................................................... 15

ii

*Islamov v. Ungar (In re Ungar)*,
   633 F.3d 675 (8th Cir. 2011) ................................................................ 12, 14

*Kane v. Johns-Manville Corp.*,
   843 F.2d 636 (2d Cir. 1988) ......................................................................... 20

*La Cruz v. Cohen (In re Cohen)*,
   185 B.R. 171 (Bankr. D.N.J. 1994) .............................................................. 12

*Longo v. McLaren (In re McLaren)*,
   3 F.3d 958 (6th Cir. 1993) ..................................................................... 12, 14

*McFarlin v. Conseco Servs., LLC*,
   381 F.3d 1251 (11th Cir. 2004) ..................................................................... 5

*Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.)*,
   910 F.2d 784 (11th Cir. 1990) ..................................................................... 17

*Morrison v. Western Builders of Amarillo, Inc. (In re Morrison)*,
   555 F.3d 473 (5th Cir. 2009) ................................................................. 12, 14

*N.I.S. Corp. v. Hallahan (In re Hallahan)*,
   936 F.2d 1496 (7th Cir. 1991) ..........................................................12, 13, 14

*Norwest Bank Worthington v. Ahlers*,
   485 U.S. 197 (1988) ..................................................................................... 15

*Pacor, Inc. v. Higgins*,
   743 F.2d 984 (3d Cir.1984) ...................................................................... 6, 11

*Ploetner-Christian v. Miceli*,
   237 B.R. 510 (Bankr. M.D. Fla. 1999) .......................................................... 9

*Porges v. Gruntal & Co. Inc. (In re Porges)*,
   44 F.3d 159 (2d Cir. 1995) ............................................................... 19, 20, 21

*Robin v. United States*,
   449 U.S. 424 (1981) ....................................................................................... 9

*Stern v. Marshall*,
   131 S. Ct. 2594 (2011) ................................................. 4, 5, 8, 13, 14, 19, 21

*Stettin v. Centurion Structured Growth*,
   Case No. 11-60400-CIV-JORDAN (S.D. Fla. Dec. 19, 2011) ................................. 13

*Stettin v. Gibraltar Private Bank & Trust Co. (In re Rothstein Rosenfeldt Adler, P.A.)*,
   Case No. 11-60748-Civ-SCOLA (S.D. Fla. Nov. 28, 2011) .................................. 13

*Walker v. Cadle Co. (In re Walker)*,
   51 F.3d 562 (5th Cir. 1995) ........................................................................... 6

*Wood v. Wood (In re Wood)*,
   825 F.2d 90 (5th Cir. 1987) ........................................................................... 6

## STATUTES

11 U.S.C. § 105(a) ............................................................................................. 15

11 U.S.C. § 349 .......................................................................................... 19, 20

11 U.S.C. § 362 .................................................................................... 3, 22, 23

11 U.S.C. § 502 ................................................................................................ 20

11 U.S.C. § 523 ........................................................................................ passim

11 U.S.C. § 727 .................................................................................................. 3

28 U.S.C. § 1334 ......................................................................................... 6, 16

28 U.S.C. § 157 .......................................................................................... 14, 17

28 U.S.C. § 158 ................................................................................................................. 1, 4
Bankruptcy Act Section 17(c)(3) ..................................................................................... 9, 10

**RULES**

Fed. R. Bankr. P. 8001 ........................................................................................................ 4
Fed. R. Bankr. P. 8003 ........................................................................................................ 4

**OTHER AUTHORITIES**

Ralph Brubaker, *Bankruptcy Court Jurisdiction to enter a Money Judgment on a
    Nondischargeable Debt: Exposing Pacor's Deficiencies and the True Supplemental Nature of
    Third-Party "Related To" Bankruptcy Jurisdiction,* 29 No. 4 Bankruptcy Law Letter 1
    (April, 2009) ............................................................................................................... 18
Susan Block-Lieb, *The Case Against Supplemental Bankruptcy Jurisdiction: A Constitutional,
    Statutory, and Policy Analysis,* 62 Fordham L. Rev. 721, 749 (1994) ...................................... 19

## PREFACE

This is an appeal from the May 16, 2011 *Order Denying Defendant's Motion to Dismiss Adversary Proceeding or, in the Alternative, for Mandatory Abstention from Plaintiffs' Request for the Entry of Money Judgment* (referred to herein as the "**Order Denying Motion to Dismiss**") [Adv. Pro. ECF No. 338] entered by the Honorable Laurel M. Isicoff, United States Bankruptcy Judge, Miami Division, United States Bankruptcy Court for the Southern District of Florida.

Appellant FABRIZIO DULCETTI NEVES will be referred to herein as "**Neves**" or "**Appellant**."   Appellees MARKWOOD INVESTMENTS LTD. and GOLDEN DAWN CORPORATION will be referred to herein as the "**Plaintiffs**" or "**Appellees**."

The United States Bankruptcy Court for the Southern District of Florida will be referred to herein as the "**Bankruptcy Court**."

Title 11 of the United States Code will be referred to as the "**Bankruptcy Code**."

The record on appeal will be referred to herein by the lower court's document number either as "**[Main Case ECF No. ___]**" representing the main bankruptcy case (*In re Fabrizio Dulcetti Neves*, Case No. 09-33043-BKC-LMI) (the "**Bankruptcy Case**"), or "**[Adv. Pro. ECF No. ___]**" representing the adversary proceeding (*Markwood Investments Ltd., et al. v. Fabrizio Dulcetti Neves*, Adv. No. 10-02122-BKC-LMI-A) (the "**Adversary Proceeding**").   References to the Appellant's Appendix will be cited as "**[A- (appendix number)]**."[1]

---

[1] The Appendix is being filed contemporaneously with Appellant's Initial Brief.

v

## STATEMENT OF BASIS OF APPELLATE JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 158(a)(3), which provides that the district courts of the United States "shall have jurisdiction to hear appeals . . . with leave of the court, from other interlocutory orders and decrees."  On November 8, 2011, the District Court entered an Order granting Neves leave to take the present appeal.  [Adv. Pro. ECF No. 422]

## STATEMENT OF ISSUE PRESENTED ON APPEAL

Whether the Bankruptcy Court erred in denying Neves' motion to dismiss the Adversary Proceeding by holding that it had subject matter jurisdiction to enter a money judgment in a non-dischargeability action on Plaintiffs' state law claims *after* its approval of Neves' voluntary waiver of his bankruptcy discharge.

## STANDARD OF REVIEW

Conclusions of law made by the bankruptcy court are subject to *de novo* review.  *In re Chase & Sanborn Corp.*, 904 F.2d 588, 593 (11th Cir. 1990).  A bankruptcy court's finding that it has subject matter jurisdiction is a legal determination that is reviewed *de novo*.  *See, e.g., Morris v. Fidelity & Deposit Co. of Maryland (In re Morris)*, 950 F.2d 1531, 1533 (11th Cir. 1992); *In re Seven Seas Petroleum, Inc.*, 522 F.3d 575, 583 (5th Cir. 2008).

## STATEMENT OF THE CASE AND FACTS

**A.     Statement of the Case.**

This is an appeal from the Bankruptcy Court's Order Denying Motion to Dismiss.  In particular, Neves is appealing the portion of that Order that found that the Bankruptcy Court had subject matter jurisdiction over the Adversary Proceeding, to award Plaintiffs a money judgment against Neves based solely on claims that arise under state law.  After the entry of the Order Denying Motion to Dismiss, Neves filed a motion in this Court seeking leave to file an interlocutory appeal.  On November 8, 2011, the Court entered an Order Granting Motion for

Leave to Appeal.  By way of this appeal, Neves requests that this Court reverse the Bankruptcy Court's Order Denying Motion to Dismiss and dismiss the Adversary Proceeding for lack of subject matter jurisdiction.

**B.     Factual and Procedural Background**

On October 23, 2009 (the "**Petition Date**"), Neves filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code with the Bankruptcy Court.  [Main Case ECF No. 1]. Prior to the Petition Date, the Plaintiffs and Neves were involved in an action in the United States District Court for the Southern District of Florida, Case No. 1:08-cv-20381-JJO.  [Main Case ECF No. 188].  Ultimately, that was case dismissed after the District Court determined that it lacked subject matter jurisdiction to grant Plaintiffs any relief.

On January 25, 2010, the Plaintiffs commenced the Adversary Proceeding against Neves. [Adv. Pro. ECF No. 1].  Initially, the Adversary Proceeding sought:  (i) to block Neves' discharge pursuant to Section 727 of the Bankruptcy Code; (ii) to obtain a determination of the dischargeability of the Plaintiffs' disputed claims pursuant to Section 523 of the Bankruptcy Code; and (iii) the entry of non-dischargeable money judgments against Neves individually for amounts allegedly owed.  [*Id.*].  Due to numerous deficiencies in their pleadings, the Plaintiffs filed a First Amended Complaint on June 1, 2010 [Adv. Pro. ECF No. 74], and then a Second Amended Complaint on November 5, 2010.  [Adv. Pro. ECF No. 151].  [A-1].

In the Wherefore clause in each of Counts I, II and III of the Second Amended Complaint (which alleged the non-dischargeability of the Plaintiffs' claims pursuant to Section 523 of the Bankruptcy Code), the Plaintiffs requested that the Bankruptcy Court "[l]iquidate Plaintiffs' claim and enter a judgment in their favor and against the Debtor sums owing[.]"  [Adv. Pro. No. 151].  On November 24, 2010, Neves filed a Motion to Dismiss for Lack of Subject Matter

Jurisdiction in Regard to Plaintiffs' Demand for Entry of Money Judgment as to Counts I, II and III of the Second Amended Complaint or in the Alternative Motion for More Definite Statement. [Adv. Pro. ECF No. 172]. In that Motion, Neves argued, among other things, that the Adversary Proceeding should be dismissed for lack of subject matter jurisdiction because Section 523 of the Bankruptcy Code does not authorize the entry of money judgments on a creditor's underlying non-bankruptcy claims. [*Id.*].

Subsequent to the filing of the motion to dismiss, on December 16, 2010, Neves voluntary filed a waiver of discharge in the Bankruptcy Case and a motion seeking the Bankruptcy Court's approval thereof pursuant to Section 727(a)(10) of the Bankruptcy Code. [Main Case ECF Nos. 324 and 325]. The Bankruptcy Court held a hearing on the motion to approve waiver of discharge on January 27, 2011. After that hearing, the Bankruptcy Court entered an Order approving Neves' voluntary waiver of his bankruptcy discharge pursuant to Section 727(a)(10) (the "**Discharge Waiver**"). [Main Case ECF No. 355].[2]

However, at that same hearing on January 27, 2011, the Bankruptcy Court also denied Neves' motion to dismiss, ruling that, in Section 523 dischargeability actions, the Court has jurisdiction to enter a judgment amount. In particular, the Bankruptcy Court summarily announced at the start of the hearing that "I have regularly ruled that in dischargeability actions I have jurisdiction to enter a judgment amount." [Adv. Pro. ECF No. 245 at p. 5:19-22]. The Bankruptcy Court did not decide whether it had jurisdiction to enter money judgments *after* the waiver of discharge because that issue was not before the Bankruptcy Court. [*Id.* at p. 20-21]. In particular, the Bankruptcy Court stated that: "What is not before me at this juncture, although we'll go back to the adversary proceeding, is I'm not going to preliminarily rule, but I'm not saying I won't ultimately rule, that I have, by virtue of the claim objection, the ability to enter a

---

[2] The Discharge Waiver terminated the automatic stay. *See* 11 U.S.C. § 362(c)(2).

judgment. That's for another day." [*Id.* at p. 20:23-25:1-4]. This comment was consistent with an earlier statement wherein the Bankruptcy Court indicated that "I don't, having said that I can enter a money judgment when I have a dischargeability complaint pending, does not follow that if I grant the waiver of discharge that I will then enter the money judgment." [*Id.* at p. 7:21-25].

Based on the Bankruptcy Court's pronouncements above, on March 7, 2011, Neves filed his Motion to Dismiss Adversary Proceeding or, in the Alternative, for Mandatory Abstention from Plaintiffs' Request for the Entry of Money Judgments. [Adv. Pro. ECF No. 267]. [A-2]. In that Motion, Neves argued that the Bankruptcy Court did not have subject matter jurisdiction because the Adversary Proceeding was no longer an action pursuant to Section 523 of the Bankruptcy Code in light of Neves' Discharge Waiver. The Plaintiffs filed a Response in Opposition to the Motion on April 13, 2011 [Adv. Pro. ECF No. 318] [A-3], and Neves filed a Reply on April 20, 2011. [Adv. Pro. ECF No. 322]. [A-4]. At a hearing on April 27, 2011, the Bankruptcy Court denied Neves' Motion to Dismiss. [Adv. Pro. ECF No. 331]. On May 16, 2011, the Bankruptcy Court entered its Order Denying Defendant's Motion to Dismiss Adversary Proceeding or, in the Alternative, for Mandatory Abstention from Plaintiffs' Request for the Entry of Money Judgment. [Adv. Pro. ECF No. 338]. [A-5].

Pursuant to 28 U.S.C. § 158(a)(3) and Rules 8001 and 8003 of the Federal Rules of Bankruptcy Procedure, on May 18, 2011, Neves filed a Motion for Leave to Appeal the Order Denying Motion to Dismiss [Adv. Pro. ECF No. 344], and a Notice of Appeal [Adv. Pro. ECF No. 345]. On November 8, 2011, the District Court entered an Order Granting Motion for Leave to Appeal. [Adv. Pro. ECF No. 422]. In granting such relief to Neves, this Court observed:

> In light of the United States Supreme Court's recent decision in <u>Stern</u>, the Court exercises its discretion to grant Neves' motion for leave to appeal. ***Here, the bankruptcy court has retained jurisdiction over a state law claim despite the original basis for its jurisdiction, dischargeability, becoming a nonissue. The***

4

*Stern* **decision addresses the scope of the bankruptcy courts' jurisdiction, specifically with regard to their ability to render final judgments in state law claims**.  The question of whether the bankruptcy court can render a final judgment on state law claims is a "pure" one that can be decided "quickly and cleanly without having to study the record."  <u>McFarlin v. Conseco Servs., LLC</u>, 381 F.3d 1251, 1258, 1260-62 (11th Cir. 2004)).  Further, although the scope and extent of <u>Stern</u> is far from clear, its applicability to this matter is certainly a question where "there is a substantial ground for difference of opinion."  <u>In re Pacific</u>, 335 B.R. at 919.  Finally, a resolution of this matter favorable to Neves would not only "advance the ultimate termination of the litigation," <u>In re Pacific</u>, 335 B.R. at 919, it would dismiss the adversary proceeding entirely.

[*Id.*] (emphasis added).  In accordance with the Court's Order granting Neves leave to appeal, this appeal ensued.

<u>**SUMMARY OF ARGUMENT**</u>

The Bankruptcy Court clearly erred in denying Neves' Motion to Dismiss.  The Bankruptcy Court does not have subject matter jurisdiction to enter a money judgment on the Plaintiffs' state law claims against Neves.  Section 523 of the Bankruptcy Code does not authorize a bankruptcy court to liquidate and enter a money judgment in a nondischargability action.  *See* 11 U.S.C. § 523.  [A-6].  Indeed, the plain language of Section 523 contains absolutely ***no*** reference to the entry of money judgments.  This is in stark contrast to the former Bankruptcy Act, which expressly required a bankruptcy court not only to determine the dischargeability of a debt, but also to enter judgments.  By its plain language, Section 523 of the Bankruptcy Code does not authorize the entry of a money judgment on the Plaintiffs' non-bankruptcy law claims against Neves.   The Bankruptcy Court therefore erred in finding that it had subject matter jurisdiction despite the lack of any statutory basis for such jurisdiction.

But even if the Bankruptcy Court otherwise had subject matter jurisdiction to enter money judgments in actions under Section 523 of the Bankruptcy Code, which it does not, the Adversary Proceeding is no longer an action under Section 523 of the Bankruptcy Code for jurisdiction to attach.  Neves' Discharge Waiver resolved all of the issues under Section 523.  All

that remains in the Adversary Proceeding are the Plaintiffs' claims against Neves (not the estate), all of which are governed by and arise under state law, not the Bankruptcy Code. In other words, the Adversary Proceeding has nothing to do with Neves' bankruptcy case or the administration of Neves' bankruptcy estate or the fixing of any creditors' claims against the bankruptcy estate. Therefore, the Bankruptcy Court does not have subject matter jurisdiction over any of Plaintiffs' pendant state law claims.

All federal courts are courts of limited jurisdiction which, for the most part, derives from statutory grants of Congress. A bankruptcy court's jurisdiction is even more circumscribed and is wholly "grounded in and limited by statute." *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995). Specifically, 28 U.S.C. § 1334(b) grants jurisdiction to district courts and adjunct bankruptcy courts to entertain proceedings "arising under," "arising in a case under," or "related to" a case under the Bankruptcy Code. *See* 28 U.S.C. § 1334. [A-7]. To determine whether such jurisdiction exists, "'it is necessary only to determine whether a matter is at least 'related to' the bankruptcy." *Walker v. Cadle Co. (In re Walker)*, 51 F.3d 562, 569 (5th Cir. 1995) (quoting *Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir. 1987)). A proceeding is "related to" a bankruptcy if "'the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.'" *Id. See also Celotex*, 514 U.S. at 308 n. 6 (noting that the First, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth, and Eleventh Circuits have adopted this test, which originated in *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir.1984)). More specifically, "'[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and ... in any way impacts upon the handling and administration of the bankruptcy estate.'" *Walker*, 51 F.3d at 569 (citations omitted). "Related to" is a term of art in bankruptcy jurisdiction, where its meaning is not as

6

broad as it is in ordinary parlance where it means "having some connection with." The distinction is that, for purposes of bankruptcy jurisdiction, there is a *cause* component in "related to." The Adversary Proceeding must therefore be capable of affecting the bankruptcy estate for it to be "related to" the bankruptcy. Thus, for limited bankruptcy jurisdiction to attach in this case, the anticipated outcome of the action must both (1) alter the rights, obligations, and choices of action of the debtor, and (2) have an effect on the administration of the estate.

In the instant case, the Plaintiffs seek the entry of a money judgment on an alleged non-dischargeable debt against Neves, personally. Under the circumstances of this case, subject matter jurisdiction cannot exist and the Bankruptcy Court should not have considered such relief under its "related to" jurisdiction. The entry of a money judgment does not affect the bankruptcy estate. This is even more so in a case where, as here, the debtor, with court approval, had already waived his discharge of any and all pre-petition debts, including Plaintiffs' unliquidated state law claims. The Adversary Proceeding is also not a case involving the adjustment of the debtor-creditor relationship in connection with a claim objection either. Moreover, the Bankruptcy Court further erred in exercising subject matter jurisdiction over the Adversary Proceeding, where no relationship exists between the Adversary Proceeding and any other proceeding on the underlying debt to justify supplemental jurisdiction on equitable grounds to fix the amount of any such claims against the debtor's bankruptcy estate. Simply stated, this action merely attempts to reduce Plaintiffs' already dismissed state law claims to judgment against Neves only to enhance Plaintiffs' future ability to collect any such alleged debt from post-bankruptcy income and assets of Neves after a waiver of discharge, with no effect at all on property of the bankruptcy estate or creditors' claims against the estate.

7

The Bankruptcy's Court exercise of subject matter jurisdiction in this situation is clearly among the concerns raised by the United States Supreme Court in *Stern v. Marshall*, 131 S. Ct. 2594 (2011).   Indeed, as this Court has already observed, the *Stern v. Marshall* decision "addresses the scope of bankruptcy courts' jurisdiction, specifically with regard to their ability to render final judgments in state law claims."   [Adv. Pro. ECF No. 422].   Although the specific holding of *Stern* is purportedly narrow (*see* 131 S. Ct. 2594, 2620 (2011)), this appeal goes to the very heart of the broader question raised by the Supreme Court's decision – the extent to which a bankruptcy court's authority to enter final judgments on state law claims can exist compatibly with the requirements of Article III of the United States Constitution.   Clearly, the Court should be concerned about bankruptcy courts and district courts exercising bankruptcy jurisdiction an district courts exercising bankruptcy jurisdiction entering final judgments on purely state law claims, particularly where, as here, such claims have ***no*** relation to the bankruptcy case or the administration of the bankruptcy estate.

Accordingly, for the reasons further explained below, Neves respectfully requests that this Court reverse the Bankruptcy Court's Order Denying Motion to Dismiss, remand this case with specific instructions to the Bankruptcy Court to dismiss the Adversary Proceeding, and award any other and further relief deemed just and proper.

## ARGUMENT

## I.   THE BANKRUPTCY COURT CANNOT ENTER A MONEY JUDGMENT ON PLAINTIFFS' UNDERLYING STATE LAW CLAIMS UNDER SECTION 523 OF THE BANKRUPTCY CODE.

The Bankruptcy Court erred by entering the Order Denying Motion to Dismiss because, by its plain language, Section 523 of the Bankruptcy Code does not authorize the entry of a money judgment on the Plaintiffs' state law claims against Neves.   The issue of whether Section

8

523 authorizes the entry of money judgments is exclusively one of statutory construction.  That is, had Congress intended to allow a creditor to liquidate and obtain a money judgment in a Section 523 nondischargability action, Congress would have expressly stated in Section 523 that a creditor could do so.  Congress, however, made **no** such statement.

The United States Supreme Court has made clear that in interpreting a statute, "a court should always turn first to one, cardinal canon [of construction] before all others" – the plain meaning rule.  *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992).  In other words, courts must presume that "Congress says in a statute what it means and means in a statute what it says. . . ."  *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (internal quotation marks omitted).  When the words of a statute are unambiguous then, "this first canon is also the last:  'judicial inquiry is complete.'"  *Conn. Nat'l Bank*, 503 U.S. at 254 (quoting *Robin v. United States*, 449 U.S. 424, 430 (1981)).[3]

Turning to Section 523's plain and unambiguous language, the sole guidepost here, the error in the Bankruptcy Court's ruling is readily apparent.  By its plain language, Section 523 contains **no** authorization for bankruptcy courts to enter money judgments.  Had Congress intended to create such a right, it would have expressly stated as such in the statute.  Congress certainly understood how to do so.  To be sure, Section 17(c)(3) of the former Bankruptcy Act required a bankruptcy court not only to determine the dischargeability of a debt, but also to enter judgment and to make necessary orders for its enforcement.  In stark contrast, however, Section 523 of the more recently enacted Bankruptcy Code explicitly mentions dischargeability, but makes **no** mention of entering a money judgment against the debtor.  Congress' silence in this

---

[3] Moreover, "[p]rovisions denying discharge to a debtor are generally construed liberally in favor of the debtor and strictly against the creditor."  *Ploetner-Christian v. Miceli*, 237 B.R. 510, 514 (Bankr. M.D. Fla. 1999).

regard is telling.  Because Congress did not include an explicit authorization to enter money judgments in the new Bankruptcy Code (but did in the former Bankruptcy Act), Congress clearly intended to eliminate a bankruptcy court's jurisdiction to enter money judgments.  *See In re Thrall*, 196 B.R. 959, 964-65 (Bankr. D. Colo. 1996) (noting the fundamental changes between the Bankruptcy Code and § 17(c) of the Bankruptcy Act and finding "nothing in the legislative history which would indicate Congress' intent to continue the practice of entering money judgments on nondischargeable debts").

The prudence of this limited jurisdiction approach based on the plain language of Section 523 was recognized by the First Circuit Court of Appeals' Bankruptcy Appellate Panel in *In re Cambio*, 353 B.R. 30 (B.A.P. 1st Cir. 2004).  In *Cambio*, the BAP astutely and correctly ruled that bankruptcy courts ***did not have jurisdiction*** to liquidate and enter a money judgment against the debtor on the underlying debt as part of an action to declare such debt non-dischargeable pursuant to Section 523 of the Bankruptcy Code.  In this regard, the *Cambio* court reasoned that:

> Most published decisions adopt the expansive approach, concluding that bankruptcy courts do have the power to enter money judgments on nondischargeable debts. Indeed, every circuit to address the issue has held that there is federal bankruptcy jurisdiction to liquidate and enter a judgment on a nondischargeable debt. ***Generally, courts that routinely enter money judgments on nondischargeable debts focus on the close factual and logical relationship between the dischargeability proceeding and any proceeding on the underlying debt, and rely on theories of judicial economy and the bankruptcy courts' inherent equitable powers.***
>
> ***Courts adopting a limited jurisdiction approach conclude that bankruptcy courts do not have the power to enter money judgments on nondischargeable debts.***  The definitive decision cited by courts adopting the limited jurisdiction approach is *In re Thrall* [196 B.R. 959, 963-64 (Bankr. D. Colo. 1996)]. In *Thrall*, the bankruptcy court examined the Bankruptcy Code and Federal Rules of Bankruptcy Procedure and concluded that while bankruptcy courts have jurisdiction to decide dischargeability complaints, they are not authorized to enter money judgments. The *Thrall* court noted that § 17(c)(3) of the former Bankruptcy Act required a bankruptcy court not only to determine the dischargeability of a debt, but also to enter judgment and to make necessary

orders for its enforcement. *However, the more recently enacted Bankruptcy Code explicitly mentions dischargeability and not the money judgments against the debtor. The Thrall court reasoned, therefore, that since Congress did not include an explicit authorization to enter money judgments in the new Bankruptcy Code, it must have intended to restrict the power of the bankruptcy courts.*

Adopting the approach taken by the *Thrall* court, the bankruptcy court in *Hamilton* [282 B.R. 22, 24 (Bankr. W.D. Okla. 2002)] similarly concluded that *by not specifically empowering bankruptcy courts to render money judgments on nondischargeable debts, Congress intended to limit bankruptcy courts to deciding the dischargeability issues. Determination of dischargeability of a debt is a limited function under the Code. It only defines the scope of discharge and does not substitute for a full and complete determination of all claims and defenses which can be asserted under non-bankruptcy law.*

*Here the facts show entry of the money judgment on the state law claim for damages due to a breach of contract was based on events occurring before this petition was filed. The record reveals there was no estate property available for distribution to creditors. Consequently, the only effect of the money judgment against this debtor would be to enhance Mattera's future ability to collect the debt from Cambio's post-bankruptcy income and assets, with no effect at all on property of the bankruptcy estate or creditors' claims against the estate. Under these circumstances, the bankruptcy court's role should be limited to determining the extent of Cambio's discharge by applying the limited jurisdiction approach, as [the] state-law claim on which a creditor seeks a money judgment does not "arise under" the Bankruptcy Code. Furthermore, it does not "arise in" the bankruptcy case under the standard test for "arising in" proceedings, because the creditor's claim against the debtor would exist in exactly the same form even in the absence of the debtor's bankruptcy filing. Indeed, that is precisely the upshot of the determination of nondischargeability. Thus, if the claim on the underlying debt is within federal bankruptcy jurisdiction at all, it is because it is "related to" the debtor's bankruptcy case. Utilizing the Pacor test* [see 743, F.2d 984 (3d Cir. 1984)]*, however, because the only effect of any money judgment against the debtor would be to enhance the creditor's future ability to collect the debt from the debtor's postbankruptcy income and assets and with no effect at all on property of the bankruptcy estate or creditors' claims against the estate, we would conclude that the claim is not "related to" the bankruptcy case.* Indeed, the few courts that actually have confronted the jurisdictional issue with the announced standards have come to the same conclusion – there is no federal bankruptcy jurisdiction to enter a money judgment against an individual debtor on a nondischargeable debt.

*Cambio*, 353 B.R. at 33-35 (emphasis added) (citations, parentheticals and certain question

marks omitted); *see also In re Losanno*, 291 B.R. 1 (Bankr. D. Mass. 2003) ("While I have the

11

authority to determine whether a debtor is non-dischargeable under 11 U.S.C. § 523, I hold that I have no authority to enter a money judgment on the judgment of non-dischargeability."); *In re Antonelli*, No. 09-1013, 2011 WL 5509494 (Bankr. D.R.I. Nov. 10, 2011) (relying on *Cambio* and holding that, although it is a function of the bankruptcy court to hear and determine denial of discharge issues, the bankruptcy court's jurisdiction does not include the power to issue a writ of execution).

Although other Circuit Courts of Appeals that have considered this issue have reached the opposite conclusion, holding that a bankruptcy court has jurisdiction to liquidate and enter a money judgment against the debtor on the underlying debt as part of an action to declare such debt non-dischargeable pursuant to Section 523 of the Bankruptcy Code, none of those cases should be followed by this Court.   *See Hall v. Davenport,* 76 F.3d 372 (4th Cir. 1996) (unpublished table decision) [A-8]; *Morrison v. Western Builders of Amarillo, Inc. (In re Morrison)*, 555 F.3d 473, 480-481 (5th Cir. 2009); *Longo v. McLaren (In re McLaren)*, 3 F.3d 958 (6th Cir. 1993); *N.I.S. Corp. v. Hallahan (In re Hallahan)*, 936 F.2d 1496 (7th Cir. 1991); *Islamov v. Ungar (In re Ungar)*, 633 F.3d 675 (8th Cir. 2011); *Cowen v. Kennedy (In re Kennedy)*, 108 F.3d 1015 (9th Cir. 1997); *In re Riebesell,* 586 F.3d 782 (10th Cir. 2009) (arguably abrogating *Thrall*).[4]

---

[4] Notably, neither the Eleventh Circuit Court of Appeals or the United States Supreme Court have ruled on this issue, despite what the Plaintiffs may otherwise suggest.  The Plaintiffs previously argued to the Bankruptcy Court that the United States Supreme Court recognized the authority of the bankruptcy court to enter a money judgment against an individual debtor on debts determined to be non-dischargeable when it affirmed a bankruptcy court order that did so.  *Citing De La Cruz v. Cohen (In re Cohen)*, 185 B.R. 171 (Bankr. D.N.J. 1994), 185 B.R. 180 (Bankr. D.N.J. 1995); *aff'd* 191 B.R. 599 (D.N.J.); *aff'd* 106 F.3d 52 (3d Cir. 1997); *aff'd* 523 U.S. 213 (1998).  However, the issue before the Supreme Court (in a case decided many years before *Stern*) was ***not*** whether the bankruptcy court had the ability to enter a money judgment, but rather whether treble damages on account of a debtor's fraud could be discharged. Therefore, the Plaintiffs' suggestion that the Supreme Court ruled on the issue here is wrong and should be disregarded by the Court.

Importantly, however, each of those cases was decided *prior* to the United States Supreme Court's recent decision in *Stern v. Marshall*, 131 S. Ct. 2594 (2011) ("*Stern*").  Since the decision in *Stern*, courts in this District have been reexamining the limits of a bankruptcy court's jurisdiction, notwithstanding the purportedly narrow holding in *Stern*.  *See, e.g., Stettin v. Gibraltar Private Bank & Trust Co. (In re Rothstein Rosenfeldt Adler, P.A.)*, Case No. 11-60748-Civ-SCOLA (S.D. Fla. Nov. 28, 2011) (Scola, J.) [ECF No. 19] (recognizing that the *Stern* decision was narrow, but withdrawing the reference as to dispositive motions given the uncertainties concerning the full extent of *Stern's* application) [A-9]; *Stettin v. Centurion Structured Growth*, Case No. 11-60400-CIV-JORDAN (S.D. Fla. Dec. 19, 2011) (Jordan, J.) [ECF No. 30] ("[I]n an abundance of caution, in light of the Supreme Court's recent opinion in *Stern v. Marshall*, 131 S. Ct. 2594 (2011), and the uncertainties concerning the extent of its application, all dispositive motions shall be referred to the bankruptcy court only for report and recommendation.").  [A-10];

Just as other courts in this District have done, this Court too should reexamine whether subject matter jurisdiction exists here, particularly in light of the Supreme Court's clear concerns about bankruptcy courts entering final judgments on purely state law claims.[5]  Indeed, the question remains whether those Circuit Court of Appeals that found jurisdiction then would reach a different conclusion now in light of the *Stern* decision.  In fact, at least one bankruptcy court has questioned whether the Seventh Circuit Court of Appeals' decision in *In re Hallahan*, 936 F.2d 1496 (7th Cir. 1991) – one of the cases cited by the Plaintiffs – would be decided

---

[5] Contrary to what the Plaintiffs previously argued in the Bankruptcy Court and might argue now, the issue on appeal is *not* whether the Bankruptcy Court or the District Court must enter a final judgment in the Adversary Proceeding.  Rather, the issue goes to the heart of *any* federal court's jurisdiction to hear the case at all.  Indeed, if this Court finds that the Bankruptcy Court lacks subject matter jurisdiction, it is not simply that the District Court would be required to enter a final judgment, but rather as this Court already recognized, "it would *dismiss the adversary proceeding entirely*."  [Adv. Pro. ECF No. 422] (emphasis added).

differently now in light of *Stern*.  *See In re Antonelli*, 2011 WL 5509494.  As that court observed, "[w]hile the court's language in *Hallahan* certainly was a reasonable statement in 1935 and 1991, ***recent Supreme Court treatment of this subject has cast a much dimmer light on the power of non-Article III courts to render money judgments in dischargeability litigation***."  *Id.* at *1 (emphasis added) (citing *Stern v. Marshall*, 131 S. Ct 2594 (2011).

Moreover, in those cases where the Circuit Courts of Appeals have found jurisdiction, those courts did so ***not*** based on the language of Section 523, but rather on theories of judicial economy and the bankruptcy courts' inherent equitable powers.  *See In re Morrison,* 555 F.3d 473 (5th Cir. 2009) (citing pragmatism and judicial economy as its rationale); *In re Riebesell,* 586 F.3d 782 (10th Cir. 2009) (citing judicial economy and consent to jurisdiction argument); *In re McLaren,* 3 F.3d 958, 965-66 (6th Cir. 1993*)* (relying solely on the language of 28 U.S.C. § 157, which generally gives bankruptcy courts power to enter appropriate orders and judgments, and not relying on any specific language from the Bankruptcy Code itself); *Islamov v. Ungar (In re Ungar*, 633 F.3d 675, 680 (8th Cir. 2001) (relying on the bankruptcy court's equitable powers and not on the language of Section 523); *In re Hallahan,* 936 F. 2d 1496, 1508 (7th Cir. 1991) (stating without explanation, and thus seemingly only for practical purposes that "[w]e think it preferable to allow bankruptcy courts ruling on the dischargeability of a debt to adjudicate issues of liability and damages also."); *In re Kennedy,* 108 F.3d 1015, 1017-18 (9th Cir. 1997) (court had jurisdiction to enter money judgment not because of language in statute, but rather because "it is *impossible* to separate the determination of dischargeability function from the function of fixing the amount of the non-dischargeable debt") (emphasis added).

However, pragmatism and equitable considerations ***cannot*** be used to create jurisdiction not otherwise provided by statute.  As recognized by the United States Supreme Court, a

14

bankruptcy court may exercise its equitable powers *only* as a means to fulfill a *specific Bankruptcy Code provision*.  *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206 (1988). Thus, "when a specific Code section addresses an issue, the court may not employ its equitable powers to achieve a result not contemplated by the Code."  *In the Matter of Fesco Plastics Corp, Inc.,* 996 F. 2d 152, 154-55 (7th Cir. 1993) (emphasis added) ("Section 105(a) of the Code delineates the limited equitable power of bankruptcy courts, stating '[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.'").  In other words, "the exercise of [a bankruptcy court's] equitable powers *must be strictly confined within the prescribed limits of the bankruptcy statutes*."  *In re Dillon*, 194 B.R. 533, 536 (Bankr. S.D. Fla. 1996) (Cristol, J.) (emphasis added); *accord Bell v. Fin. Guild of Am. (In re Bell)*, 28 B.R. 9, 12 (9th Cir. B.A.P. 1983) ("The parties and the court lost sight, it seems to us, of the fact that the *bankruptcy court exists to afford statutorily defined relief to debtors and to creditors*.") (emphasis added).

Here, the language of Section 523 is silent as to the entry of money judgments.  This silence simply cannot be construed to demonstrate any Congressional intent that bankruptcy courts have jurisdiction to enter money judgments.  To the contrary, the omission of such language from the Bankruptcy Act to the Bankruptcy Code indicates that Congress specifically did *not* intend for the bankruptcy courts to have such jurisdiction.  And courts, such as the Bankruptcy Court here, simply *cannot* use equitable considerations to create jurisdiction that Congress has not provided.  *Fesco Plastics*, 966 F.2d at 157; *In re Dillon*, 194 B.R. at 536; *Guerin v. Weil, Gotschal & Manges,* 205 F. 2d 302, 304 (2d Cir. 1953) (Hand, J.) ("Although it has been broadly stated that a bankruptcy court is a court of equity, the exercise of its equitable powers must be strictly confined within the prescribed limits of the… [controlling statute]").

Therefore, because Section 523 of the Bankruptcy Code does not specifically provide for the entry of money judgments as its predecessor did, the Bankruptcy Court erred as a matter of law in finding that, under Section 523, it had subject matter jurisdiction to enter a money judgment on the Plaintiffs' state law claims against Neves.

## II.    THE BANKRUPTCY COURT LACKED SUBJECT MATTER JURISDICTION OVER THE ADVERSARY PROCEEDING.

Even if the Bankruptcy Court otherwise had jurisdiction to enter a money judgment in a Section 523 nondischargability action, the Adversary Proceeding is no longer an action pursuant to Section 523 of the Bankruptcy Code.  Neves has already agreed to waive his discharge, and the Bankruptcy Court already approved that waiver.  When the Bankruptcy Court did so, it fully and unequivocally resolved the Plaintiffs' action against Neves under Section 523.  Indeed, all that remains now are the Plaintiffs' claims against Neves (not the estate), all of which are governed by and arise under state law, *not* the Bankruptcy Code.

The question for this Court to decide is therefore simple – is there a *statutory* basis for the Bankruptcy Court to exercise subject matter jurisdiction over the Adversary Proceeding when the only relief the Plaintiffs seek is the entry of a money judgment against Neves (not the estate) based solely on claims that arise under state law?  Because the answer is undoubtedly "No," the Bankruptcy Court erred and the Adversary Proceeding should be dismissed for lack of subject matter jurisdiction.

The jurisdiction of the bankruptcy courts is statutorily prescribed by Congress.  In particular, Congress has granted jurisdiction to the bankruptcy courts in three categories of proceedings:  those "arising under title 11," those "arising in" cases under title 11, and those "related to" cases under title 11.  *See* 28 U.S.C. § 1334.  Where, as here, a case does not fit within one of those three statutorily enumerated categories, the bankruptcy court does *not* have

16

subject matter jurisdiction.  *See, e.g., In re Happy Hocker Pawn Shop, Inc.*, 212 Fed. Appx. 811 (11th Cir. 2006).

The Eleventh Circuit recently acknowledged the limits of bankruptcy courts' jurisdiction in *Happy Hocker* when it affirmed decisions of the Bankruptcy Court and the District Court holding that a lawsuit relating to a trustee's mistaken closing of a pawn shop did not "arise under" or "relate to" the Bankruptcy Code.  *Id.* at 817-18.  The Eleventh Circuit found that the lawsuit did not "arise under" the Bankruptcy Code and was not a core proceeding "because it allege[d] tortious actions against property that is not property of the estate."  *Id.* at 817 (citing *Continental Nat'l Bank v. Sanchez (In re Toledo)*, 170 F.3d 1340, 1348 (11th Cir. 1999)).  Moreover, the lawsuit did not "invoke a substantive right created by bankruptcy law" and "could arise outside of bankruptcy law."  *Happy Hocker*, 212 Fed. Appx. at 817.  The Eleventh Circuit further found that the lawsuit was not "related to" the bankruptcy case.  *Id.*  The Eleventh Circuit explained that the test for related to jurisdiction is "'***whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy. . . .'  In other words, 'if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively),' it would satisfy the 'related to' requirement of § 157(c)(1).***"  *Id.* (quoting *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.)*, 910 F.2d 784, 788 (11th Cir. 1990)) (emphasis added).  The Eleventh Circuit held that the lawsuit in *Happy Hocker* failed this test because "***the damages . . . would not come out of HHPS's bankruptcy estate.  The appellees' claims charge [the trustee] with wrongdoing in his individual capacity.  The bankruptcy estate would not be liable for [the trustee's] acts.***"  *Happy Hocker*, 212 Fed. Appx. at 818 (emphasis added).  For all these reasons, the Eleventh Circuit concluded that "the Bankruptcy Court lacked subject matter jurisdiction to resolve the claims . . . ."  *Id.*

17

Similarly, in *A.M.S. Printing Corp. v. Wernick (In re Wernick)*, 242 B.R. 194 (Bankr. S.D. Fla. 1999), the Honorable Judge Raymond B. Ray of the United States Bankruptcy Court for the Southern District of Florida recognized that a bankruptcy court's jurisdiction is limited. In *Wernick*, Judge Ray was asked to decide whether the bankruptcy court had subject matter jurisdiction to issue writs of garnishment in connection with a Section 523 non-dischargeable stipulated final judgment. *Id.* at 195. Judge Ray found that "[a]lthough the litigation between the Plaintiff and the Debtors that resulted in the non-dischargeable judgment was related to the Debtors' bankruptcy estate, ***the dispute over collection of the debt is not related to the bankruptcy estate***." *Id.* at 197 (emphasis added). Judge Ray therefore held that the bankruptcy court lacked subject matter jurisdiction, and the plaintiff was "***free to seek enforcement through the state courts.***" *Id.* at 198 (emphasis added).

Here, as in *Happy Hocker* and *Wernick*, the Adversary Proceeding does not arise under, arise in or relate to a case under the Bankruptcy Code. First, the Adversary Proceeding does not arise under the Bankruptcy Code. The Adversary Proceeding does not invoke a substantive right created by bankruptcy law and could arise outside of bankruptcy law. Indeed, there are no issues left for the Bankruptcy Court to decide under Section 523 of the Bankruptcy Code. Rather, all of the issues pertaining to the liquidation of the Plaintiffs' claims are governed by and arise under state law, ***not*** the Bankruptcy Code. Moreover, the only relief the Plaintiffs seek is the entry of a money judgment against ***Neves***, ***not*** the bankruptcy estate, due to alleged wrongdoing by ***Neves*** in his individual capacity. In other words, the Adversary Proceeding will have no affect on Neves' bankruptcy estate. The Adversary Proceeding therefore does not even relate to a case under the Bankruptcy Code. *Wernick*, 242 B.R. at 197 (proceeding must affect the bankruptcy estate to be related to the bankruptcy); *see also* Ralph Brubaker, *Bankruptcy Court Jurisdiction*

18

*to enter a Money Judgment on a Nondischargeable Debt: Exposing Pacor's Deficiencies and the True Supplemental Nature of Third-Party "Related To" Bankruptcy Jurisdiction,* 29 No. 4 Bankruptcy Law Letter 1 (April, 2009) ("because the outcome of the creditor's action against the debtor on the underlying nondischargeable debt can have no conceivable effect on the debtor's bankrupt estate, it should not be considered 'related to' the debtor's bankruptcy case. . . .") [A-11]; *accord* Susan Block-Lieb, *The Case Against Supplemental Bankruptcy Jurisdiction: A Constitutional, Statutory, and Policy Analysis,* 62 Fordham L. Rev. 721, 749 (1994) (concluding that a creditor's request for a money judgment on a nondischargeable debt has no effect on the estate and thus cannot be within third-party "related to" bankruptcy jurisdiction).   [A-12]. Therefore, the Bankruptcy Court lacks *any* basis (statutory or otherwise) for exercising subject matter jurisdiction over the Plaintiffs' purely state law claims in the Adversary Proceeding.

Notwithstanding the fact that the Adversary Proceeding meets none of the statutory bases for conferring subject matter jurisdiction upon the Bankruptcy Court, the Bankruptcy Court nevertheless found that it had subject matter jurisdiction to enter a money judgment on purely state law claims, relying primarily on *Fidelity & Deposit Co. of Maryland v. Morris (In re Morris)*, 950 F.2d 1531 (11th Cir. 1992), and *Porges v. Gruntal & Co. Inc. (In re Porges)*, 44 F.3d 159 (2d Cir. 1995).  Those cases, both of which were decided ***before*** *Stern v. Marshall*, do not support a finding that the Bankruptcy Court has subject matter jurisdiction here.

In *Morris*, the Eleventh Circuit Court of Appeals found that the bankruptcy court could continue to exercise jurisdiction over an adversary proceeding notwithstanding the bankruptcy court's dismissal of the underlying bankruptcy case.  950 F.2d at 1534.  In so doing, the court expressly acknowledged that under 11 U.S.C. § 349, the bankruptcy court could, for cause, retain jurisdiction notwithstanding the dismissal of the bankruptcy case.  *Id.* at 1535.  In  other words,

the bankruptcy court had a **statutory** basis for continuing to exercise jurisdiction.  And, because the factors of judicial economy, fairness and convenience to the litigants supported a finding of cause under Section 349, the court in *Morris* concluded that the bankruptcy court could exercise jurisdiction over the adversary proceeding.  *Id.*

In *Porges*, the Second Circuit Court of Appeals validated the entry of a money judgment where the debtor voluntarily dismissed his Chapter 13 proceedings after a trial on his claim objection but just before entry of a judgment, which the bankruptcy court entered notwithstanding the dismissal of the main proceedings.  44 F.3d at 164-65.  The court found that "Section 502 . . . required the bankruptcy court to 'determine [] the validity of claim[s] and the amount allowed.'"  *Id.* at 164 (quoting *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 646 (2d Cir. 1988)).  According to the Second Circuit, entry of a money judgment was proper because "[i]t was then but a short and logical step for the bankruptcy court to enter a money judgment against Porges, on the basis of its section 502 determination, pursuant to Federal of Civil Procedure 58 and Bankruptcy Rule 9021."  *Porges*, 44 F.3d at 164.  The *Porges* court also found that "[t]he entry of a money judgment also finds support in the bankruptcy court's inherent equitable powers."  *Id.*

The instant case is readily distinguishable from both *Morris* and *Porges*.  Unlike *Morris*, there is no **statutory** basis for the Bankruptcy Court to have subject matter jurisdiction after the issues under Section 523 were resolved as a result of Neves' Discharge Waiver.  In fact, as discussed above, there is no statutory basis **at all** for the entry of a money judgment under Section 523 of the Bankruptcy Code.

Additionally, none of the non-statutory bases for exercising jurisdiction apply in light of Neves' waiver of discharge.  Judicial economy and convenience will not be served by the

Bankruptcy Court exercising jurisdiction.   Unlike *Porges*, this is not a case where the determination of dischargeability of the debt is "intertwined" with the determination of the amount of the debt, such that it would be a "short and logical step" for the Bankruptcy Court to enter a money judgment in conjunction with the dischargeability determination.   Indeed, the Bankruptcy Court does not have to make ***any*** determination as to dischargeability because Neves already waived his discharge.   Rather, the Bankruptcy Court will ***only*** be deciding purely state law claims against Neves.   Therefore, there is simply no practical or logical reason for the Bankruptcy Court to have jurisdiction to enter money judgments against Neves on the Plaintiffs' purely state law claims.

Moreover, the Bankruptcy Court's "equitable powers" cannot support a finding of jurisdiction.   As discussed above, a bankruptcy court's equitable powers are not unlimited.   To the contrary, the exercise of [a bankruptcy court's] equitable powers ***must be strictly confined within the prescribed limits of the bankruptcy statutes***."   *In re Dillon*, 194 B.R. 533, 536 (Bankr. S.D. Fla. 1996) (Cristol, J.) (emphasis added) ("The fact that a bankruptcy proceeding is equitable, does not give the judge a free-floating discretion to redistribute rights in accordance with his personal views of justice and fairness.").   In other words, in the absence of statutory authority, a bankruptcy court does ***not*** have the equitable power to do that which it might otherwise deem fair or equitable.

This limitation on the bankruptcy court's jurisdiction has only been amplified by the Supreme Court's decision in *Stern*.   As this Court previously observed, the Supreme Court's decision in *Stern* "addresses the scope of bankruptcy courts' jurisdiction, specifically with regard to their ability to render final judgments in state law claims."   [Adv. Pro. ECF No. 422]. Although the specific holding of *Stern* is purportedly narrow (*see* 131 S. Ct. at 2620), clearly, the

majority of Justices are concerned about bankruptcy courts entering final judgments on purely state law claims, particularly where, as here, such claims have no relation to bankruptcy causes of action or the administration of the bankruptcy estate.  Given those concerns, it is by no means a stretch to imagine the Supreme Court being deeply troubled by a bankruptcy court resting its jurisdiction solely on equitable considerations.

In fact, not only can equitable considerations *not* create jurisdiction where it is not otherwise provided by statute, but considerations of public policy support a finding *against* bankruptcy courts having jurisdiction to enter money judgments in cases such as this.  To be sure, the rule that the Plaintiffs seek would render bankruptcy courts into judgment mills performing supposedly ministerial acts that have the potential to be both time consuming and complicated, and which have *nothing* to do with the administration of the bankruptcy estate.  For example, whereas in this case there is only one creditor seeking the entry of a money judgment, in a case with hundreds (if not thousands) of creditors where the debtor has waived his discharge, every creditor could conceivably come to the bankruptcy court seeking the entry of money judgments.  In that instance, the bankruptcy courts would be mired in performing acts that have nothing to do with the administration of the bankruptcy estate.  This, however, is clearly not the job of the bankruptcy courts.  *See, e.g., Wernick*, 242 B.R. at 197-98 (recognizing the limitation on a bankruptcy court's ability to serve as a collection agency to perform acts unrelated to the bankruptcy estate, and holding that the bankruptcy court lacked subject matter jurisdiction to issue a writ of garnishment because "***the dispute over collection of the debt is not related to the bankruptcy estate***" and, therefore, the plaintiff was "***free to seek enforcement through the state courts***") (emphasis added).[6]

---

[6] Such a rule likewise undermines the purpose of Section 362's automatic stay provisions which, for example, prohibit post-petition state court collection efforts against a debtor.  *See* 11 U.S.C. §§ 362(a)(2),

On the other hand, if the Plaintiffs attempt to draw a distinction between those creditors that file actions under Section 523 and those that do not, the Plaintiffs' rule would give a special, unfair advantage to certain creditors after the debtor's waiver of the discharge.  That is, those creditors who filed a Section 523 action prior to the waiver of discharge would have the ability to obtain money judgments from the bankruptcy court, whereas all other creditors would be left to seek money judgments in another court with competent jurisdiction.  Such a rule clearly runs afoul of the bankruptcy policy of creditor equality.

In short, there is no *statutory* authority for the Bankruptcy Court to exercise subject matter jurisdiction and enter a money judgment against Neves on the Plaintiffs non-bankruptcy law claims.  Not only does Section 523 ***not*** authorize the entry of money judgments, but the Adversary Proceeding is no longer an action under Section 523.  The Section 523 issues were already fully decided by virtue of Neves' Discharge Waiver.  All that remains are the Plaintiffs' state law claims against Neves, none of which are governed by the Bankruptcy Code or have anything to do with Neves' bankruptcy case or the administration of Neves' bankruptcy estate.  The Plaintiffs, of course, are free to pursue those state law claims in a court of competent jurisdiction.[7]

---

(3), (4), (5) and (6).  Here, following the Discharge Waiver, the stay terminated as a matter of law.  *See* 11 U.S.C. § 362(c)(2)(C).  At that time, the Plaintiffs and all other creditors of the estate were free to proceed against non-estate property outside the confines of the Bankruptcy Court.  The approach the Plaintiffs want this Court to adopt ignores the rights provided to creditors upon the termination of the automatic stay.

[7] Although the Plaintiffs have suggested to the Bankruptcy Court that they were somehow forced to litigate their claims in the Bankruptcy Court, there is no reason why the Plaintiffs could not have brought an action against Neves in state court.  Prior to the Petition Date, the Plaintiffs filed an action against Neves in federal district court, notwithstanding the fact that the district court did not have subject matter jurisdiction.  Plaintiffs could have brought that action in state court, but due to their own error, the relief obtained against Neves was void.  Moreover, once Neves voluntarily waived his discharge, the Plaintiffs were then free to initiate an action against Neves in a court *with* subject matter jurisdiction (*i.e.*, state court).  *See* 11 U.S.C. § 362(c)(2)(C).  The Plaintiffs, however, have chosen not to do so.

## CONCLUSION

For the reasons set forth herein, the Bankruptcy Court erred in denying Neves' motion to dismiss for lack of subject matter jurisdiction.  Neves therefore respectfully requests that this Court reverse the Order Denying Motion to Dismiss and dismiss the Adversary Proceeding for lack of subject matter jurisdiction.

## REQUEST FOR ORAL ARGUMENT

Neves respectfully requests that oral argument be scheduled on this matter and that no less than one hour be allocated for the same.

Respectfully submitted on this <u>29th</u> day of December, 2011.

GENOVESE JOBLOVE & BATTISTA, P.A.
*Counsel for Fabrizio Dulcetti Neves, Appellant*
100 Southeast Second Street, 44th Floor
Miami, Florida 33131
Tel.: (305) 349-2300
Fax: (305) 349-2310

By  /s/ David C. Cimo
      Paul J. Battista, Esq.
      Florida Bar No. 884162
      Email: pbattista@gjb-law.com
      David C. Cimo, Esq.
      Florida Bar No. 775400
      Email: dcimo@gjb-law.com
      Carlos E. Sardi, Esq.
      Florida Bar No. 781401
      Email: csardi@gjb-law.com
      Joshua R. Alhalel, Esq.
      Florida Bar No. 0016320
      Email: jalhalel@gjb-law.com
      Michael L. Schuster, Esq.
      Florida Bar No. 57119
      Email: mschuster@gjb-law.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this <u>29th</u> day of December, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record and parties identified on the Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.


                                      __/s/ David C. Cimo_____
                                          David C. Cimo

### <u>SERVICE LIST</u>

**NEVES v. MARKWOOD INVESTMENTS, LTD., et al.**
**CASE NO. 1:11-CV-24505-KMM**

<u>**VIA CM/ECF**</u>

Jose A. Casal, Esq.
Michael E. Rothenberg, Esq.
Holland & Knight LLP
701 Brickell Avenue, Suite 3000
Miami, Florida 33131
Tel: (305) 789-7401
Fax: (305) 789-7799
Email: jose.casal@hklaw.com
Email: michael.rothenberg@hklaw.com
*Counsel for Appellees*