# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

---

## NO. 1:11-CV-24505-KAM

---

### FABRIZIO DULCETTI NEVES,

**Appellant,**

**v.**

### MARKWOOD INVESTMENTS LTD.
### and GOLDEN DAWN CORPORATION,

**Appellees,**

---

## ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT FOR THE
## SOUTHERN DISTRICT OF FLORIDA, MIAMI DIVISION

---

### APPELLEES' RESPONSE BRIEF

---

John J. Monaghan, Esq.
Jose A. Casal, Esq.
Alex Gonzalez, Esq.
Brett A. Barfield, Esq.
Michael E. Rothenberg, Esq.
HOLLAND & KNIGHT LLP
701 Brickell Avenue, 30th Floor
Miami, Florida 33131
(305) 374-8500
*Counsel for Appellees*

# TABLE OF CONTENTS

**Page**

TABLE OF CITATIONS ................................................................................................. ii

Statement of Issue on Appeal ........................................................................1

Standard of Review..........................................................................................1

Statement of the Case and Summary of the Argument......................................1

Factual Background ........................................................................................2

Argument .......................................................................................................6

I.      *Stern* has no application to this case but even if it did it would result at most in a mere shifting of the division of labor between this court and the bankruptcy court. ......................................................................................6

     A.      *Stern* is not applicable to this Section 523 proceeding. ............................6

     B.      *Stern* is not a jurisdictional decision: it clarified only the Constitutional authority of a bankruptcy court. ........................................8

     C.      The Federal Courts have jurisdiction over this matter...............................10

     D.      The bankruptcy court has Constitutional authority to enter final judgment in this proceeding ...........................................................14

II.      Statutory subject matter jurisdiction to liquidate and enter a money judgment on Neves' non-dischargeable debts attached with the filing of the complaint.................................................................................................16

     A.      The legislative history of Section 523 supports a finding of subject matter jurisdiction to liquidate and enter a money judgment on nondischargeable debts.........................................................17

     B.      Every Court of Appeals to consider the issue has held that a bankruptcy court has jurisdiction to liquidate and enter final judgment on a non-dischargeable debt, and the Supreme Court has implicitly affirmed such jurisdiction. .........................................20

     C.      The bankruptcy court's jurisdiction to liquidate and enter judgment on Neves' nondischargeable debts was unaffected by Neves' voluntary waiver of discharge. .................................................22

Conclusion ...................................................................................................25

CERTIFICATE OF SERVICE ................................................................................26

i

## <u>TABLE OF CITATIONS</u>

**CASES**                                                                    **Page**

*A.M.S. Printing Corp. v. Wernick (In re Wernick)*,
    242 B.R. 194 (Bankr. S.D. Fla. 1999) ............................................................12

*Adelson v. Smith (In re Smith)*,
    389 B.R. 902 (Bankr. D. Nev. 2008) ............................................................23

*Aerni v. Columbus Fed. Sav. (In re Aerni)*,
    86 B.R. 203 (Bankr. D. Neb. 1988) ............................................................15

*BankUnited Fin. Corp v. FDIC (In re BankUnited Fin. Corp.)*,
    No. 10-02872-BKC-LMI,
    2011 WL 5884925 (Bankr. S.D. Fla. Nov. 23, 2011) ............................................6

*Belveal v. West (In re West)*,
    No. 06-1022, 2007 WL 4563444 (Bankr. W.D. Ky. Dec. 21, 2007) ...............................24

*Cambio v. Mattera (In re Cambio)*,
    353 B.R. 30 (BAP 1st Cir. 2004) ..............................................8, 16, 17, 19

*Cohen v. De La Cruz*,
    523 U.S. 213 (1998) ............................................................24

*Cowen v. Kennedy (In re Kennedy)*,
    108 F.3d 1015 (9th Cir. 1997) ............................................................19, 21

*De La Cruz v. Cohen (In re Cohen)*,
    185 B.R. 171 (Bankr. D.N.J. 1994) ............................................................20, 24

*De La Cruz v. Cohen (In re Cohen)*,
    185 B.R. 180 (Bankr. D.N.J. 1995), *aff'd*, 191 B.R. 599 (D.N.J. 1996),
    *aff'd*, 106 F.3d 52 (3d Cir. 1997), *aff'd*, 523 U.S. 213 (1998) ...............................21, 24

*Dragisic v. Boricich (In re Boricich)*,
    No. 08 A 00728,
    2011 WL 5579062, (Bankr. N.D. Ill. Nov. 15, 2011) ............................................7

*Drummond v. Freeland (In re Freeland)*,
    360 B.R. 108 (Bankr. D. Md. 2006) ............................................................23

*Farooqi v. Carroll (In re Carroll)*,
    No. 11-3321,
    2011 WL 6292880 (Bankr. N.D. Tex. Dec. 13, 2011) ............................................7, 9

# TABLE OF CITATIONS

**CASES (cont'd)**                                                                                      **Page**

*Fid. & Deposit Co. of Md. v. Morris (In re Morris)*,
    950 F.2d 1531 (11th Cir. 1992) ....................................................................................1

*First Omni Bank, N.A. v. Thrall (In re Thrall)*,
    196 B.R. 959 (Bankr. D. Colo. 1996) .....................................................................8, 17

*Gradco Corp. v. Blankenship (In re Blankenship)*,
    408 B.R. 854 (Bankr. N.D. Ala. 2009) ..................................................................15, 21

*Graham v. Comm'r*,
    75 T.C. 389 (1980)..................................................................................................18

*Granfinanciera, S.A. v. Nordberg*,
    492 U.S. 33 (1989)...................................................................................................7

*Hall v. Davenport*,
    76 F.3d 372 (4th Cir. 1996) ....................................................................................20

*Harris v. U.S. Fire Ins. Co.*,
    162 B.R. 466 (E.D. Va. 1994)..................................................................................24

*Heller Ehrman LLP v. Arnold & Porter LLP (In re Heller Erhman LLP)*,
    No. C 11-04848 CRB, 2011 WL 6179149 (N.D. Cal. Dec. 13, 2011) ..............................9

*Hi-Qual Roofing & Siding Materials, Inc. v. Ridsdale (In re Ridsdale)*,
    286 B.R. 238 (Bankr. W.D.N.Y. 2002) ................................................................17, 18

*In re Antol Restoration, Inc.*,
    444 B.R. 481 (Bankr. S.D. Fla. 2011) .......................................................................13

*In re Antonelli*,
    No. 09-1013, 2011 WL 5509494 (Bankr. D.R.I. Nov. 10, 2011)......................................8

*In re Friedman*,
    300 B.R. 149 (Bankr. D. Mass. 2003) .......................................................................13

*In re Goldcoast Partners, Inc.*,
    No. 97-10728, 1998 WL 34069487 (Bankr. S.D. Fla. June 15, 1998) .............................22

*In re Happy Hocker Pawn Shop, Inc.*,
    212 F. App'x. 811 (11th Cir. 2006) ..........................................................................12

*In re Hillsborough Holdings Corp.*,
    218 B.R. 617 (M.D. Fla. 1991).................................................................................13

## TABLE OF CITATIONS

**CASES (cont'd)**                                                                                   **Page**

*In re Lemco Gypsum, Inc.*,
    910 F.2d 784 (11th Cir. 1990) ............................................................................12, 13, 22

*In re Ryan*,
    276 F. App'x 963 (11th Cir. 2008) ................................................................................13

*In re Safety Harbor Resort and Spa*,
    No. 8:10–bk–25886, 2011 WL 3849639 (Bankr. M.D. Fla. Aug. 30, 2011) ....................6

*Islamov v. Ungar (In re Ungar)*,
    633 F.3d 675 (8th Cir. 2011) ...................................................................................20, 21

*Johnson v. Riebesell (In re Riebesell)*,
    586 F.3d 782 (10th Cir. 2009) ............................................................................. *passim*

*Katchen v. Landy*,
    382 U.S. 323 (1966)..................................................................................................7, 12

*Kirschner v. Agoglia (In re REFCO Inc.)*,
    No. 07–3060 (RDD), 2011 WL 5974532 (Bankr. S.D.N.Y. Nov. 30, 2011) ..................10

*Langenkamp v. Culp*,
    498 U.S. 42 (1990)...........................................................................................................7

*Lesser v. Gray*,
    236 U.S.70 (1915)..........................................................................................................12

*Levey v. Hanson's Window & Constr., Inc. (In re Republic Windows & Doors, LLC)*,
    No. 10-02526, 2011 WL 6157342 (Bankr. N.D. Ill. Dec. 12, 2011)............................9, 10

*Longo v. McLaren (In re McLaren)*,
    3 F.3d 958 (6th Cir. 1993) ...................................................................................15, 20, 22

*Menotte v. U.S. (In re Custom Contractors, LLC)*,
    No. 10-03455, 2011 WL 6046397
    (Bankr. S.D. Fla. Dec. 5, 2011) ......................................................................................6

*Morrison v. Western Builders of Amarillo, Inc. (In re Morrison)*
    555 F. 3d 473 (5th Cir. 2009) ............................................................................... *passim*

*N.I.S. Corp. v. Hallahan (In re Hallahan)*,
    936 F.2d 1496 (7th Cir. 1991) ...................................................................................20, 22

iv

## TABLE OF CITATIONS

**CASES (cont'd)**                                                                        **Page**

*N. Pipeline Construction Co. v. Marathon Pipe Line Co.*,
450 U.S. 50 (1982).............................................................................................7

*Pacor, Inc. v. Higgins*,
743 F.2d 984, 994 (3rd Cir. 1984) ...........................................................12, 13

*Pellegrino v. Metro Unlimited, Inc. & Dakhllalah (In re Dakhllalah)*,
No. 6:09-AP-739-KSJ, 2010 WL 148457 (Bankr. M.D. Fla. Jan. 7, 2010) ...............21, 24

*Pioneer Credit Co. v. Detamore (In re Detamore)*,
No. 05-6079, 2005 WL 6486098 (Bankr. N.D. Ga. Sept. 27, 2005) .................................21

*Porges v. Gruntal & Co., Inc. (In re Porges)*,
44 F.3d 159 (2d Cir. 1995)..............................................................1, 20, 23, 24

*Reed v. Linehan (In re Soporex, Inc.)*,
No. 11-3306-BJH, 2011 WL 5911674 (Bankr. N.D. Tex. Nov. 28, 2011) ......................10

*Rentrak Corp. v. Forbes (In re Forbes)*,
186 B.R. 764 (Bankr. S.D. Fla. 1995) ............................................................21

*Samson v. Blixseth (In re Blixseth)*,
No. 10-88, 2012 WL 10193 (Bankr. D. Mont. Jan. 4, 2012)............................................10

*Sasson v. Sokoloff (In re Sasson)*,
424 F.3d 864 (9th Cir. 2005) *cert. denied*, 547 U.S. 1206 (2006)....................................20

*SJM v. Korfonta (In re Korfonta)*,
No. 08-16675-SSM, 2010 WL 4259396 (Bankr. E.D. Va. Oct. 26, 2010)......................23

*Snyder v. Devitt (In re Devitt)*,
126 B.R. 212 (Bankr. D. Md. 1991) ............................................................21

*St. Paul Fire and Marine Ins. Co. v. Vinecki (In re Vinecki)*,
247 B.R. 327 (Bankr. M.D. Fla. 2000) ...................................................15, 21

*Stern v. Marshall*,
131 S. Ct. 2594 (2011)............................................................... *passim*

*Stettin v. Centurion Structured Growth*,
No. 11-60400-CIV-JORDAN (S.D. Fla. Dec. 19, 2011)...................................................10

*Stettin v. Gibraltar Private Bank & Trust Co. (In re Rothstein Rosenfeldt Adler, P.A.)*,
No. 11-60748-Civ-SCOLA (S.D. Fla. Nov. 28, 2011)....................................................10

## TABLE OF CITATIONS

**FEDERAL STATUTES**                                                     **Page**

Title 11, United States Code, Section 105(a)........................................................20, 22

Title 11, United States Code, Section 157(b)(2)(A) ....................................................15

Title 11, United States Code, Section 157(b)(2)(P)....................................................15

Title 11, United States Code, Section 502(b) ............................................................12

Title 11, United States Code, Section 523 ........................................................ *passim*

Title 11, United States Code, Section 523(a)(2)(A) ...................................................15

Title 11, United States Code, Section 523(a)(4) ........................................................15

Title 11, United States Code, Section 523(a)(6) ........................................................15

Title 28, United States Code, Section 157 ....................................................... *passim*

Title 28, United States Code, Section 157(b)(1)...................................................14, 19

Title 28, United States Code, Section 157(b)(2)...................................................14, 19

Title 28, United States Code, Section 157(b)(2)(I)............................................14, 15, 19

Title 28, United States Code, Section 157(c)(1) ..................................................10, 14

Title 28, United States Code, Section 1334 .........................................................10, 11

Title 28, United States Code, Section 1334(b) ..................................................11, 14, 15

**RULES**

Rule 54, Federal Rules of Civil Procedure ...............................................................19

Rule 7001(6), Federal Rules of Bankruptcy Procedure ...............................................19

Rule 7054, Federal Rules of Bankruptcy Procedure....................................................19

## TABLE OF CITATIONS

**OTHER AUTHORITIES**                                                                 **Page**

Susan Block-Lieb, *The Case Against Supplemental Bankruptcy Jurisdiction:*
    *A Constitutional, Statutory, and Policy Analysis*,
    62 Fordham L. Rev. 721 (1994).........................................................................14

Ralph Brubaker, *On the Nature of Federal Bankruptcy Jurisdiction:*
    *A General Statutory and Constitutional Theory*,
    41 Wm. & Mary L. Rev. 743 (2000) ...............................................................19

Randolph J. Haines, *Old Rules Reveal* Pacor*'s Shortcomings*,
    2003 No. 1 Norton Bankr. L. Adviser 1 ..........................................17, 18, 19, 20

House of Representative, Report No. 95-595 (1977),
    reprinted in 1978 U.S.C.C.A.N. 5963, 6401, 6410...........................................19

## Statement of Issue on Appeal

Whether the Supreme Court's decision in *Stern v. Marshall* affects the Bankruptcy Court's otherwise correct ruling that it has jurisdiction to liquidate and enter final judgment on Neves' non-dischargeable debts following Neves' voluntary waiver of discharge.

## Standard of Review

A bankruptcy court's decision to exercise jurisdiction in an adversary proceeding is reviewed *de novo*. *Porges v. Gruntal & Co., Inc. (In re Porges)*, 44 F.3d 159, 163 (2d Cir. 1995). Its decision to retain that jurisdiction is reviewed for abuse of discretion. *Fid. & Deposit Co. of Md. v. Morris (In re Morris)*, 950 F.2d 1531, 1535 (11th Cir. 1992).

## Statement of the Case and Summary of the Argument

This Court granted appeal to decide a narrow issue: whether the *Stern v. Marshall*, 131 S.Ct. 2594 (2011) decision affects the jurisdiction of the Bankruptcy Court to enter final judgment in the adversary below brought pursuant to 11 U.S.C. § 523, stating, "in light of the United States Supreme Court's recent decision in *Stern*, the Court exercises its discretion to grant Neves' motion for leave to appeal" [Adv. ECF No. 422, pp. 4-5]. In *Stern*, the Supreme Court held that a bankruptcy court lacked the Constitutional authority to finally decide a debtor's state law counterclaim against a creditor that was unrelated to a determination of the creditor's claim against the estate.   That holding has no application to the creditor-Appellees' adversary proceeding or claims filed against the debtor-Appellant.   When the Court permitted appeal, neither this Court nor the parties had the benefit of myriad new decisions interpreting *Stern* and establishing that: (i) *Stern* does not address issues concerning *subject matter jurisdiction* at all, but only a bankruptcy court's *Constitutional* authority to enter final judgment; and (ii) even when a bankruptcy court lacks the authority to render final judgment under *Stern*, it nevertheless has

authority to hear the case and issue proposed findings of fact and conclusions of law for *de novo* review by a U.S. District Court. Thus, it is now clear that even where *Stern* has some application, in no event will dismissal be appropriate.

Notwithstanding the Court's clear indication that *Stern* is the basis for appeal, Neves' Initial Brief is remarkably scant on discussion of *Stern*. Instead, he challenges decades of case law decided before *Stern*—hardly appropriate fodder for the extraordinary occurrence of an interlocutory appeal, particularly when the decades of case law holds virtually unanimously that a bankruptcy court has the power and jurisdiction to enter final monetary judgment against a debtor in connection with Section 523 challenges to dischargeability of a debt. *Stern* has no effect on that precedent nor does Neves' voluntary waiver of discharge filed almost a year after jurisdiction attached with the filing of Appellees' complaint. The Court should therefore affirm the order denying Neves' motion to dismiss.

## Factual Background

In 2008, Appellees commenced an action in the U.S. District Court for the Southern District of Florida against Neves to recover on three promissory notes totaling over $10 million. By agreement, the district court in that proceeding entered partial final judgment on the pleadings against Neves on two of the three notes.[1] On October 23, 2009, shortly before trial was set to begin on the one remaining promissory note claim, and three days after the U.S. Marshals Service conducted a levy at Neves' residence to collect on the partial final judgment, Neves filed his petition for bankruptcy. He thus chose the bankruptcy court as the forum for his disputes and

---

[1] Although jurisdiction was premised on diversity, and notwithstanding that Neves admitted to that jurisdiction in his answer, the district court vacated the judgment following Neves' bankruptcy filing based on a lack of diversity jurisdiction.

forced Appellees to litigate their claims against him in that forum. Consequently, Appellees instituted the adversary proceeding and filed proofs of claim in the main bankruptcy proceeding.

The adversary proceeding challenged Neves' right to receive any discharge under Section 727 of the Bankruptcy Code. And pursuant to Section 523 of the Bankruptcy Code, Appellees sought liquidation of and judgment on the specific debts Neves owes Appellees and a determination that those debts are non-dischargeable [Adv. ECF No. 1].[2]

From February to November 2010, Neves actively participated in the litigation in the forum *he chose* without raising any jurisdictional argument. He answered the complaint and filed a counterclaim [Adv. ECF Nos. 7, 8, 54], moved for judgment on the pleadings [Adv. ECF No. 61], filed an objection to Appellees' proofs of claim [Main ECF No. 250], and moved to dismiss the complaint [Adv. ECF No. 96]. The parties also conducted significant discovery. Neves ultimately filed four more motions to dismiss but obtained almost none of the relief he sought.

Neves' first motion to dismiss argued unsuccessfully that the first amended complaint failed to state causes of action under Section 523 [Adv. ECF No. 96]. The court held that the complaint stated a cause of action for Section 523 fraud [Adv. ECF No. 138]. Granting the motion in part, however, the court, ordered Appellees to file a second amended complaint to delete certain allegations ruled irrelevant. *Id.*

Neves moved to dismiss the second amended complaint and asserted – *for the first time* – that the bankruptcy court lacked jurisdiction to enter a money judgment in a Section 523 proceeding despite his choice of the forum [Adv. ECF No. 172]. While that motion was pending, and on the eve of his scheduled deposition, Neves fled to Brazil and failed to appear at his

---

[2] The specific debts arise from the same $10 million in promissory notes and Neves' theft from Appellees of another $20 million. [Adv. ECF No. 1]

deposition in violation of a court order [Adv. ECF No. 130 ¶ 4].[3] The day after he fled the jurisdiction, he filed a voluntarily waiver of discharge of his debts [Main ECF No. 324]. The bankruptcy court denied Neves' second motion to dismiss [Adv. ECF No. 265] and approved his waiver of discharge [Main ECF No. 335], holding that it has jurisdiction to enter money judgments in dischargeability litigation, but declined to decide (because it was not before the court) whether jurisdiction adheres after a waiver of discharge [Adv. ECF No. 245, Hrg. Tr. @ 7:22-25, Jan. 27, 2011]. Thus, that portion of Appellees' Section 523 action that sought a finding of nondischargeability was deemed moot—liability for the debts, amount of the debts and judgment on the debts remain to be tried [Adv. ECF No. 265].

Neves' final gauntlet was set forth in his third motion to dismiss. [Adv. ECF No. 267]. After removing himself from the reach of U.S. process by fleeing to Brazil, Neves relied on his waiver of discharge to proclaim that his surrender on one of the two forms of relief sought in the complaint (dischargeability) ends the dispute entirely, or at least deprives the bankruptcy court of jurisdiction to adjudicate the remaining relief requested (liability and judgment). The bankruptcy court denied the third motion to dismiss and, in the order currently on appeal, held that it has discretion to retain jurisdiction over the adversary proceeding notwithstanding his waiver [Adv. ECF No. 338]. Following Eleventh Circuit precedent, the bankruptcy court applied factors weighing fairness and efficiency to decide whether to exercise its discretion to retain jurisdiction. In so doing, the bankruptcy court found that Neves' obvious motive throughout the litigation was to avoid a merits adjudication of Appellees' claims and concluded that a dismissal of the adversary proceeding after a year and a half of litigation and in light of Neves' conduct would be

---

[3]The bankruptcy court sanctioned Neves for failing to appear at his deposition. [Adv. ECF No. 298]. Neves eventually appeared by video-conference from London, England for his deposition and asserted the Fifth Amendment to every one of over 500 questions over two days.

unfair and inefficient [Adv. ECF No. 331, Hgr. Tr. @ 42:4-19, April 27, 2011].[4] And Appellees would be left with no avenue of redress for their claims because Neves was now resident in Brazil, far from the reach of any U.S. court. *Id.*

Following announcement of the court's ruling, *Neves requested* a streamlined complaint that required him to answer only those aspects of Appellees' Section 523 claims dealing with liability, not dischargeability. In response, the bankruptcy court ordered Appellees to file "a more definite statement" in a pleading that sought only liability and judgment on the debts, the remaining aspects of the Section 523 claims after Neves' waiver resolved the dischargeability issue.[5] Accordingly, Appellees filed their third amended complaint, making clear that only one of the two aspects of their Section 523 claims was resolved by Neves' waiver and that the liability and judgment aspects of the Section 523 claims remain for trial. The third amended complaint asserts only Section 523 claims.[6]

---

[4] "[W]hat has happened here is that the debtor has decided that the debtor does not want the merits of this claim adjudicated [and] that the debtor is trying to avoid a resolution of a claim that he brought into this Court in front of me by virtue of his filing of the bankruptcy case, and in that way, I believe that it would be inappropriate for me to reward the debtor by granting the motion to dismiss the adversary proceeding and, therefore, I'm going to deny the motion to dismiss"

[5] At the hearing, Neves' counsel requested that Appellees "amend the adversary case so that we have claims under state law . . . ." The Court and counsel for Appellees, however, understood that "state law" was simply shorthand for the underlying liability issues of Appellees' Section 523 claims. The bankruptcy later observed: "[I]t was [Neves' counsel] that requested that the complaint be amended so that it was just clear for the record what the allegations were, to make it a cleaner document, almost like a motion for more definite statement, and that was the only reason why the complaint was amended from the second amended complaint to the third amended complaint." [Adv. ECF No. 420, Hrg. Tr. @ 45:4-13, Oct. 31, 2011]. Of course, all claims, whether dischargeable or non-dischargeable, are premised on state law, *see* 11 U.S.C. §502(b)(2) (claims to be allowed unless unenforceable under "applicable law").

[6] Neves then filed his fourth motion to dismiss [Adv. ECF No. 375], which the court denied [Adv. ECF No. 431]. Notwithstanding denial of the fourth motion to dismiss, the bankruptcy court ordered Appellees to again amend their adversary complaint solely to add the amount of interest due on each of the three promissory notes at issue. [Adv. ECF No. 419]. Remarkably, Neves filed a fifth, frivolous motion to dismiss for which Appellees will be seeking additional sanctions. [Adv. ECF No. 479].

## <u>Argument</u>

**I.      *Stern* has no application to this case but even if it did it would result at most in a mere shifting of the division of labor between this court and the bankruptcy court.**

The narrow holding in *Stern* has no application to this case. Even if it did, however, *Stern* dealt only with the Constitutional power of a bankruptcy court to enter final judgment as to one defined subset of "core proceedings," an issue relevant only to the division of labor between the bankruptcy court and the district court, not to a bankruptcy court's statutory jurisdiction. Thus, even if *Stern* applied here, dismissal will be unavailable. Instead, the bankruptcy court would submit to this Court findings of fact and conclusions of law for *de novo* review.

**A.      *Stern* is not applicable to this Section 523 proceeding.**

Neither *Stern* nor the cases leading up to it suggest any limitation on a bankruptcy court's authority to determine whether a claim is dischargeable nor to enter a money judgment on a claim by a creditor against a debtor. Instead, the *Stern* decision clarified only the Constitutional authority of a bankruptcy court to finally decide a state law counterclaim by a debtor against an unconsenting creditor. The majority held that in one "isolated" respect, the "narrow" question before the Court was to be answered that Congress exceeded Constitutional limitations in allocating final judgment authority to a non-Article III court. 131 S.Ct. at 2620. Stated plainly, *Stern* held narrowly that a creditor maintains a right to have a counterclaim brought by the debtor finally determined by an Article III court,[7] but *Stern* had no effect whatsoever on the continuing power of the bankruptcy court to enter final judgment on the claim of a creditor against a debtor.

---

[7] Two bankruptcy courts in the Southern District of Florida and one in the Middle District of Florida have recognized the limited nature of *Stern*. *See, e.g., BankUnited Fin. Corp v. FDIC (In re BankUnited Fin. Corp.)*, No. 10-02872-BKC-LMI, 2011 WL 5884925 (Bankr. S.D. Fla. Nov. 23, 2011) (Isicoff, J.); *Menotte v. U.S. (In re Custom Contractors, LLC)*, No. 10-03455, 2011 WL 6046397, at *3 (Bankr. S.D. Fla. Dec. 5, 2011) (Hyman, J.); *In re Safety Harbor Resort and*

Each of the cases the Supreme Court relied on in *Stern* involved the same factual paradigm—a creditor's assertion that a debtor could not force the creditor to litigate to a final order in a bankruptcy court. *N. Pipeline Construction Co. v. Marathon Pipe Line Co.*, 450 U.S. 50 (1982) (debtor's state law contract claim against non-debtor party); *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989) (fraudulent transfer claim against a non-creditor); *Katchen v. Landy*, 382 U.S. 323, 329 (1966) (preference action); *Langenkamp v. Culp*, 498 U.S. 42 (1990) (preference action where the defendant filed a proof of claim). In neither *Stern*, nor its precursors, did the Supreme Court suggest a Constitutional limitation on the bankruptcy court's authority to finally adjudicate a creditor's claim against the one party that has voluntarily and willingly submitted to the bankruptcy court's jurisdiction—the debtor.[8] In fact, at least two courts have expressly so held:

> *Stern* left intact the authority of a bankruptcy judge to fully adjudge a creditor's claim. In this case, the claim was an adversary proceeding against debtor to bar dischargeability of a debt due to Plaintiff. Therefore, the authority to enter a final dollar judgment as part of the adjudication of nondischargeability, as recognized in *Hallahan*, was not impaired by *Stern*.

*Dragisic v. Boricich (In re Boricich)*, No. 08 A 00728, 2011 WL 5579062, at *1-2 (Bankr. N.D. Ill. Nov. 15, 2011). *See also Farooqi v. Carroll (In re Carroll)*, No. 11-3321, 2011 WL 6292880, at *7, 10 (Bankr. N.D. Tex. Dec. 13, 2011) ("*Stern* does not hold, directly or indirectly, that an Article I tribunal is without the Constitutional authority to liquidate a creditor's claim against a

---

*Spa*, No. 8:10–bk–25886, 2011 WL 3849639, at *10 (Bankr. M.D. Fla. Aug. 30, 2011) (Williamson, J.).

[8] And none of the cases Neves cites involved a debtor disputing his consent to jurisdiction after filing bankruptcy and forcing his creditors to litigate in that forum, as Neves has done here.

debtor through entry of a final dollar judgment and then determine whether that judgment is dischargeable in the debtor's bankruptcy case.").[9]

The view that *Stern* did not disturb a bankruptcy court's ability to determine and enter a judgment on a claim against a debtor is supported on yet another basis expressly set forth in the opinion: consent to the adjudication of a controversy by a non-Article III court. While post-*Stern* focus has been on the Supreme Court's "isolated" holding that final adjudication of a state law based counterclaim against a non-consenting creditor is beyond the Constitutional authority of the bankruptcy court, the Court also dealt with the bankruptcy court's ability to adjudicate the state law defamation claim that Stern asserted against the debtor. As to that claim, *Stern* held that, "[g]iven [Marshall's] course of conduct before the Bankruptcy Court, we conclude that he consented to that court's resolution of his . . . claim (and forfeited any argument to the contrary)." *Stern*, 131 S.Ct. at 2608. It is difficult to conceive of a party that has more clearly consented to a bankruptcy court's adjudication of claims than a debtor. *See, e.g.*, *Johnson v. Riebesell (In re Riebesell)*, 586 F.3d 782, 793 (10th Cir. 2009) ("the debtor by filing bankruptcy has consented to jurisdiction of the bankruptcy court over matters necessary to the determination of adversarial proceedings.").

**B.**   ***Stern* is not a jurisdictional decision: it clarified only the Constitutional authority of a bankruptcy court.**

Neves' appeal asserts that the bankruptcy court's order denying his motion to dismiss for lack of jurisdiction is in error. Interlocutory review of the bankruptcy court's denial of that motion was granted in order to consider the impact of *Stern* on the jurisdictional challenge

---

[9] Neves relies on *In re Antonelli*, No. 09-1013, 2011 WL 5509494, at *1 (Bankr. D.R.I. Nov. 10, 2011). The issue in *Antonelli*, however, concerned a judgment creditor seeking a writ of execution. Moreover, the bankruptcy court there was bound by the BAP opinion in *Cambio* which, as discussed *infra*, was based on (1) the specific facts of that no-asset bankruptcy, and (2) the flawed reasoning set forth in the overruled *Thrall* case.

interposed by Neves. *Stern* is clear on its face, however, that it is not jurisdictional, but rather addresses the Constitutional authority of a bankruptcy court to enter a final judgment.

The Supreme Court in *Stern* stated that "we are not inclined to interpret statutes as a jurisdictional bar when they are not framed as such." *Id.* at 2607. It went on to indicate that the statute there (also at issue here), 28 U.S.C. § 157, "does not have the hallmarks of a jurisdictional decree." *Id.* Rather, "[s]ection 157 allocates the authority to enter final judgment between the bankruptcy court and the district court. That allocation does not implicate questions of subject matter jurisdiction." *Id*; *see also Levey v. Hanson's Window & Constr., Inc. (In re Republic Windows & Doors, LLC)*, No. 10-02526, 2011 WL 6157342, at *3 (Bankr. N.D. Ill. Dec. 12, 2011) ("Contrary to the Defendant's broad reading of *Stern*, that decision does not implicate subject matter jurisdiction."); *Carroll*, 2011 WL 6292880, at *10 (in context of liquidating a debt and entering a money judgment against a debtor individually the court held "*Stern* simply clarified bankruptcy courts' constitutional power, not their subject matter jurisdiction").

The distinction between Constitutional authority to enter final judgment dealt with in *Stern*, and jurisdictional limitations not impacted by *Stern*, is critical. The former affects only the division of labor between the bankruptcy court and this Court; but the latter affects the power of any federal court to adjudicate this, or any, dispute premised on a state law claim.

When a bankruptcy court has jurisdiction but lacks Constitutional authority to finally decide an action, it may nonetheless proceed and issue proposed findings of fact and conclusions of law. *See Heller Ehrman LLP v. Arnold & Porter LLP, (In re Heller Erhman LLP)*, No. C 11-04848 CRB, 2011 WL 6179149, at *6 (N.D. Cal. Dec. 13, 2011) (it is "the logical conclusion . . . that the bankruptcy court may enter proposed findings of fact and conclusions of law on such actions even though it may no longer finally decide them"). Other courts have come to the same

9

conclusion. *See Reed v. Linehan, (In re Soporex, Inc.)*, No. 11-3306-BJH, 2011 WL 5911674, at *3 (Bankr. N.D. Tex. Nov. 28, 2011); *see also Kirschner v. Agoglia (In re REFCO Inc.)*, No. 07–3060 (RDD), 2011 WL 5974532, at *3-4 (Bankr. S.D.N.Y. Nov. 30, 2011); *Republic Windows*, 2011 WL 6157342, at * 6.

Neves cleverly states that since *Stern*, "courts in this District have been reexamining the limits of a bankruptcy court's jurisdiction, notwithstanding the purportedly narrow holding in *Stern*." *See* In. Brief. p. 13. But neither of the two recent cases from the Southern District of Florida he cites[10] considered the "limits of a bankruptcy court's [subject matter] jurisdiction." Rather, both cases identified potential *Constitutional* limitations in light of *Stern* but ordered only a very limited withdrawal of the reference.[11] As the Court observed in *Stern*, its decision would not meaningfully change the division of labor in the statute. *Stern*, 131 S.Ct. at 2620.

A lack of constitutional authority to enter final judgment, therefore, does not abrogate jurisdiction, but only relegates the case to the province of 28 U.S.C. §157(c)(1), in which findings of fact and conclusions of law are submitted to the this Court for *de novo* review. There is thus no set of circumstances in which dismissal based on *Stern* will be appropriate.

### C.    The Federal Courts have jurisdiction over this matter

As the *Stern* decision recognized, the scope of federal court jurisdiction is not set forth in 28 U.S.C. §157's allocation of final judgment responsibility. Rather, jurisdiction is defined in 28 U.S.C. §1334, and consists of cases "arising under title 11 or arising in or related to a case under Title 11." Federal court jurisdiction exists as to such matters, "notwithstanding any Act of

---

[10] *Stettin v. Gibraltar Private Bank & Trust Co. (In re Rothstein Rosenfeldt Adler, P.A.)*, No. 11-60748-Civ-SCOLA (S.D. Fla. Nov. 28, 2011) (Scola, J.) and *Stettin v. Centurion Structured Growth*, No. 11-60400-CIV-JORDAN (S.D. Fla. Dec. 19, 2011) (Jordan, J.).

[11] Moreover, the bankruptcy court that issued the decision frequently cited as the source of contrary authority has since reversed itself. *Samson v. Blixseth (In re Blixseth)*, No. 10-88, 2012 WL 10193, at *9 (Bankr. D. Mont. Jan. 4, 2012).

Congress that confers exclusive jurisdiction on a court or courts other than the district courts." 28 U.S.C. §1334(b). As to those matters regarding which jurisdiction exists, there are two categories set forth in Section 157 of Title 28—those regarding which a bankruptcy court may enter final judgment, and those regarding which, absent consent, the bankruptcy court may only enter proposed findings of fact and conclusions of law for a district court to review and enter final judgment regarding. Federal jurisdiction exists over this action because it both arises under Title 11 and relates to Neves' bankruptcy case.

There is little basis for disputing that federal court jurisdiction exists as to the nondischargeability action brought by Appellees, including the request that the amount of the nondischargeable debt be liquidated. A challenge to dischargeability of a debt "is, without question, a constitutional and statutory federal question claim 'arising under' the Bankruptcy Code, because the bankruptcy discharge is relief established by federal bankruptcy law and Section 523 expressly authorizes such a declaration regarding the effect of the federal bankruptcy discharge." *Morrison v. Western Builders of Amarillo, Inc. (In re Morrison)* 555 F. 3d 473, 478 (5th Cir. 2009).

Even if Neves' characterization of Appellees' complaint as a claim determination rather than the liquidation of the amount of a non-dischargeable debt were accurate, there would still be federal court jurisdiction under 28 U.S.C. §1334. The one unassailable area of bankruptcy court jurisdiction recognized by the Supreme Court in *Stern* "stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *Stern*, 131 S.Ct. at 2618. This recognition of broad authority to finally determine claims is well-founded, dating back to the Bankruptcy Act of 1898 in which there was "full power to inquire into the validity of any alleged debt or obligation of the bankrupt." *Katchen*, 382 U.S. at 329.

Although it is clear that determination of a creditor's claim against a debtor – like the one here – "arises under" the Bankruptcy Code, *see id*; *see also* 11 U.S.C. §502(b) ("the court . . . shall determine the amount of such claim in lawful currency of the United States . . . ."), all that is required for a federal court to have jurisdiction over a dispute is for that dispute to be "related to" the bankruptcy case.[12] And this action, in addition to arising under Title 11, clearly is also related to Neves' bankruptcy case. "Cases related to the bankruptcy case are those whose outcome could have any conceivable effect on the estate being administrated in bankruptcy." *Morrison*, 555 F.3d at 479.

The Eleventh Circuit adopted the following test for determining whether a proceeding is "related to" bankruptcy:

> [W]hether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy. The proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*In re Lemco Gypsum, Inc.*, 910 F.2d 784, 788 (11th Cir. 1990) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984)). As the Eleventh Circuit has emphasized, "[t]he key word in

---

[12] Neves relies on two cases that have nothing to do with whether there is jurisdiction to enter judgment on a nondischargeable debt in an action filed by a creditor against a debtor: *In re Happy Hocker Pawn Shop, Inc.*, 212 F. App'x. 811, 814 (11th Cir. 2006) and *A.M.S. Printing Corp. v. Wernick (In re Wernick)*, 242 B.R. 194, 197 (Bankr. S.D. Fla. 1999).

*Happy Hocker* is not applicable to whether there is bankruptcy jurisdiction below. It was an adversary proceeding against a trustee in his individual capacity for taking possession of property that was not property of the estate. *Id*. at 814. It did not deal with claims filed against a debtor for nondischargeable debts pursuant to Section 523.

*Wernick* also has no application here because that case dealt with post-judgment proceeding proceedings after a bankruptcy case has been closed. There was no jurisdiction over a garnishment proceeding because it did not "relate to" a case under Title 11. *Id*. at 196-97. *Wernick* did not address whether a bankruptcy court has jurisdiction to enter a money judgment on a nondischargeable debt against a debtor individually.

the *Lemco Gypsum/Pacor* test is 'conceivable,' which makes the jurisdictional grant extremely broad." *In re Ryan*, 276 F. App'x 963, 966 (11th Cir. 2008); *See also In re Antol Restoration, Inc.*, 444 B.R. 481, 484 (Bankr. S.D. Fla. 2011) ("The crucial word found in this test is conceivable. Certainty, or even likelihood, is not a requirement.") (citations omitted). And "[p]recedent indicates that a proceeding is 'related to' a bankruptcy case if it affects the amount of property available for distribution or allocation of property among the creditors." *Antol Restoration*, 444 B.R. at 484. Liquidation of and judgment on Neves' debts, whether dischargeable or nondischargeable, is at the very least "related to" his bankruptcy case.

Liquidation and judgment on Neves' nondischargeable debts will have *res judicata* effect as to the amount of Appellees' claims—Appellees filed proofs of claim regarding their Section 523 claims and expect distribution of funds already on hand with and anticipated to be received by the Chapter 7 trustee. Whether a determination of the amount of Appellees' claims is made by the bankruptcy court in the context of the pending adversary proceeding, by the bankruptcy court in the context of a claim objection or, as Neves posits, by a state court in a subsequently filed law suit, that determination will have *res judicata* effect as to either of the other two proceedings. *See In re Hillsborough Holdings Corp.*, 218 B.R. 617 (M.D. Fla. 1991). A determination that will dictate what Appellees receive from both Neves and in the Trustee's distribution at the very least is "related to" Neves' rights and the administration of the estate.

Proceedings to determine Appellees' claims will not only impact what Appellees receive in the trustee's ultimate distribution, but will also affect the distribution Neves' other creditors will receive. *See In re Friedman*, 300 B.R. 149, 151 (Bankr. D. Mass. 2003) ("This Court's finding that it has jurisdiction to enter a money judgment [in a Section 523 proceeding] is also supported by the necessity of liquidating claims for purposes of distribution in all but no asset

cases."). Determining the amount of Appellees' allowed claims will also determine the extent that Appellees' claims dilute the other creditors' distribution. In this asset laden Chapter 7 case, liquidation of Appellees' claims and entry of judgment against Neves individually will have a "conceivable effect" on his rights and liabilities both within and outside of bankruptcy, including how much Neves' creditors' will be entitled to receive from the estate.

### D.   The bankruptcy court has Constitutional authority to enter final judgment in this proceeding

It being clear that there is federal court jurisdiction, the next step of the analysis is to determine which federal court, the district court or the bankruptcy court, is to enter final judgment. In accordance with 28 U.S.C. § 1334(b)'s jurisdictional grant of bankruptcy jurisdiction, "district courts may refer 'core' and 'related-to' proceedings to the bankruptcy courts for adjudication." *Morrison*, 586 F.3d at 793. A bankruptcy court may hear "core" proceedings and enter final judgment pursuant 28 U.S.C. § 157(b)(1)-(2). In contrast, proceedings that are only "otherwise related to a case under title 11" are those that a bankruptcy court may hear but only submit proposed findings of facts and conclusions of law to the district court. *See* 28 U.S.C. § 157(c)(1).

A dischargeability challenge brought pursuant to 11 U.S.C. § 523, like Appellees' claims here, is expressly identified as a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). *See also Morrison*, 555 F.3d at 479.[13] There is no dispute that a bankruptcy court can finally decide the

---

[13] Moreover, the determination of the amount of Appellees' unliquidated claims, which will occur in the adversary proceeding below, is also a core proceeding. In fact, "[l]itigation surrounding a proof of claim 'arises in' a title 11 case for purposes of § 1334(b)." Susan Block-Lieb, *The Case Against Supplemental Bankruptcy Jurisdiction: A Constitutional, Statutory, and Policy Analysis*, 62 Fordham L. Rev. 721, 817, n. 516 (1994). Moreover, Susan Block-Lieb's article does not outright conclude, as Neves contends, that "a creditor's request for a money judgment on a nondischargeable debt has no effect on the estate and thus cannot be within third-party 'related to' bankruptcy jurisdiction." In. Brief. p. 19. Rather, footnote 173 references only

dischargeability of a specific debt pursuant to this core jurisdiction. Even if one were to leave the dischargeability issue aside as Neves urges, both allowance and disallowance of claims, 11 U.S.C. §157(b)(2)(A), and "other proceedings affecting . . . the debtor-creditor relationship," 11 U.S.C. §157(b)(2)(P), are expressly designated as core proceedings.

Recognizing that courts considering the issue "have paid little attention to the jurisdictional dichotomy of core and related-to jurisdiction and have instead relied principally on tradition and pragmatism," the Fifth Circuit in *Morrison* held that "entry of judgment for the [non-dischargeable] debt is proper because the court actually determined the existence and validity of the debt in a core proceeding." 555 F.3d at 479 (citing *Longo v. McLaren (In re McLaren)* 3 F.3d 958 (6th Cir. 1993)). And, "[t]here is no good reason why the core characteristic of a [nondischargeability] proceeding should not extend to the determination of the exact amount of a debt which is excepted from the discharge." *St. Paul Fire and Marine Ins. Co. v. Vinecki (In re Vinecki)*, 247 B.R. 327, 329 (Bankr. M.D. Fla. 2000); *see also Gradco Corp. v. Blankenship (In re Blankenship)*, 408 B.R. 854, 867 (Bankr. N.D. Ala. 2009) ("A state law cause of action does not change the substance of the proceeding from a core nondischargeability proceeding under 28 U.S.C. § 157(b)(2)(I). It is in substance both, as are most nondischargeability proceedings brought pursuant to sections 523(a)(2)(A), (4), and (6)."). Neves cites no law – and we have found none – where a court determined that a core proceeding brought pursuant to Section 523 was transformed into something other than core by a debtor's unilateral conduct after commencement of the proceeding.

---

the specific decision in *Aerni v. Columbus Federal Savings (In re Aerni)*, 86 B.R. 203 (Bankr. D. Neb. 1988), which addressed the issue of ancillary jurisdiction in the context of a lender's counterclaim that sought a determination of dischargeability and entry of judgment.

Neves relies on *Cambio v. Mattera (In re Cambio)*, 353 B.R. 30, 33-35 (BAP 1st Cir. 2004), in which the majority found the bankruptcy court lacked authority in that case to enter a money judgment against a debtor in connection with a nondischargeability challenge. But the court in *Cambio* did not hold that bankruptcy courts never have the authority to enter a money judgment. Rather, the *Cambio* court held only that the bankruptcy court could not enter a money judgment under the specific facts of that case, where, unlike here, there were no assets for distribution to creditors and, therefore, no need to liquidate disputed claims. *Id*. at 34 ("[u]nder these circumstances"; "[w]e find it is not appropriate to apply the expansive approach in this case"). In contrast, in the present case there are funds for distribution, there is a need to determine disputed claims, and the bankruptcy court's judgment in the adversary proceeding will also determine Appellees' claims for the purpose of distribution.

Thus, the federal courts clearly have jurisdiction over this matter, and because it presents a core proceeding, the bankruptcy court may enter final judgment. Even if this Court holds that this matter constitutes something other than a core proceeding, liquidation and entry of judgment on the debt is at minimum "related to" to the case and the bankruptcy court can hear the case and submit findings of fact and conclusions of law to this Court pursuant to Section 157.

## II.   Statutory subject matter jurisdiction to liquidate and enter a money judgment on Neves' non-dischargeable debts attached with the filing of the complaint.

Neves ignores the limited scope of the Court's grant of appellate review, and nearly ignores *Stern*, and advances the virtually insupportable argument that no federal court (bankruptcy or district) has subject matter jurisdiction to enter a monetary judgment in a Section 523 adversary proceeding. The Court may make short shrift of this position, which all eight Courts of Appeals to consider it have already rejected. Neves' waiver of discharge long after the Section 523 proceeding commenced did not divest the court of that statutory jurisdiction.

16

A.   **The legislative history of Section 523 supports a finding of subject matter jurisdiction to liquidate and enter a money judgment on nondischargeable debts.**

A bankruptcy court's subject matter jurisdiction to enter a monetary judgment against a debtor on a nondischargeable debt is firmly rooted in the Bankruptcy Code. In fact, a review of the history of Section 523, including § 17(c)(3) of the 1898 Bankruptcy Act and former Rule 409(b), demonstrates that "it *was* the express intent of Congress to vest bankruptcy courts with jurisdiction to enter judgment on nondischargeable debts." Randolph J. Haines, *Old Rules Reveal Pacor's Shortcomings*, 2003 No. 1 Norton Bankr. L. Adviser 1. Neves' complete reliance on the contrary reasoning set forth in the overruled opinion in *First Omni Bank, N.A. v. Thrall (In re Thrall)*, 196 B.R. 959, 963-64 (Bankr. D. Colo. 1996)[14] which was later relied on in *Cambio*, 353 B.R. at 33-35, is unavailing.

The legislative history of the statutes governing Section 523 dischargeability claims demonstrates Congressional intent to maintain the then-existing authority of bankruptcy courts to liquidate and enter a money judgment on nondischargeable debts. In *Hi-Qual Roofing & Siding Materials, Inc. v. Ridsdale (In re Ridsdale)*, the court analyzed the Interim Bankruptcy Rules and Forms and reconciled the differences between the pre- and post-Bankruptcy Code jurisdictional language with regard to the authority to enter a money judgment:

> The Advisory Committee on Bankruptcy Rules very clearly spoke to this matter in 1979 in the all-but-forgotten "Interim Bankruptcy Rules and Forms." The Committee Note to Interim Rule 4003 stated that former Rule 409(b) and (c) "are unnecessary because of the expanded jurisdiction of the Bankruptcy Court and preservation of right to trial by jury where allowed by statute. Interim Bankruptcy

---

[14] The Tenth Circuit's decision in *Morrison*, which holds that a bankruptcy court has jurisdiction to enter a money judgment on a nondischargeable debt, implicitly overruled *Thrall*. 586 F.3d at 793.

> Rules and Forms Manual (Callaghan & Company, 1979) drafted by the Advisory Committee on Bankruptcy Rules of the Judicial Conference of the United States.
>
> **It was on that basis that the Supreme Court and Congress have repeatedly approved the successor Rule (Rule 4007) without the need for explicit authority to enter a money judgment**.
>
> This writer knows of nothing in the 1984 jurisdictional changes to address the *Marathon* ruling, that would change that result.

286 B.R. 238, 239 (Bankr. W.D.N.Y. 2002) (emphasis added). Former Rule 409(b) "provid[ed] that if [a creditor's] claim has not been reduced to judgment, the creditor shall include in a complaint or answer filed in a proceeding to determine dischargeability of the debt, a statement of his claim **and demand for judgment on the debt**." *Graham v. Comm'r*, 75 T.C. 389 (1980) (emphasis added). As noted by the court in *Ridsdale*, however, this language was rendered superfluous due to the expanded jurisdiction afforded bankruptcy courts in the Bankruptcy Code. *See Ridsdale*, 286 B.R. at 239; *see also* Haines, *Old Rules*, at 2 ("Given the basic thrust of the Code to broaden and consolidate bankruptcy court jurisdiction over all matters related to a bankruptcy, it would be surprising if Congress intended to eliminate some of the jurisdiction they had been exercising for nine years under the Act.").

Prior versions of the Bankruptcy Act required the splitting of dischargeability actions into two lawsuits. With the amendments, Congress' intended to eliminate such legal splintering: the "[1970] provision in § 17c(3) render[ed] unnecessary a splitting of actions or two lawsuits, which was a criticism directed to prior versions of legislation attempting to give jurisdiction to the bankruptcy courts to determine the dischargeability of debts." *Graham*, 75 T.C. at 398. In fact, "under Section 17(c)(3) of the 1898 Bankruptcy Act, bankruptcy courts were empowered to enter such money judgments . . . The Bankruptcy Code did not specifically codify this authority upon its enactment in 1978, but, as one court noted, the Code authorized bankruptcy courts

generally to hear all core proceedings, including nondischargeability complaints, and to enter appropriate orders **and judgments**." *Morrison*, 555 F.3d at 479 (citing 28 U.S.C. §§ 157(b)(1), 157(b)(2)(I) and *Cowen v. Kennedy (In re Kennedy)*, 108 F.3d 1015, 1017-18 (9th Cir. 1997)) (emphasis added). The Federal Rules of Bankruptcy Procedure ("F.R.B.P.") that implemented those amended provisions adopted Federal Rule of Civil Procedure 54, F.R.B.P 7054, the very rule that enables this Court to enter money judgments, and made that rule applicable to dischargeability challenges. *See* F.R.B.P. 7001(6).

Relying entirely on the almost unanimously scorned decision in *Thrall* – as adopted by the court in *Cambio* – Neves argues: "Because Congress did not include an explicit authorization to enter money judgments in the new Bankruptcy Code (but did in the former Bankruptcy Act), Congress clearly intended to eliminate a bankruptcy court's jurisdiction to enter money judgments." In. Brief. p. 10. But this position has been repeatedly rejected and is contradicted by the legislative history of Section 523. As Judge Haines recognized in his article:

> Although these explicit [jurisdictional] provisions were not carried over into the Reform Act as finally adopted, this was not due to an intent to eliminate such jurisdiction, but rather merely to eliminate duplication, because the Reform Act's pervasive jurisdiction was intended to include "all items listed by the Bankruptcy Commission in its proposed bill . . . as well as all items that the bankruptcy courts are now able to hear under Act § 2a," including "determination of dischargeability of debts [and] liquidation of nondischargeable debts."

Haines, *Old Rules*, at 2.[15] *See also Morrison*, 555 F.3d at 479. ("Congress . . . could not have intended to cut back on [bankruptcy courts'] ability to enter money judgments in core proceedings encompassed by non-dischargeability complaints.").

---

[15] Citing H.R. Rep. No. 95-595, at 446 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6401, 6410 (quoted in Ralph Brubaker, *On the Nature of Federal Bankruptcy Jurisdiction: A General Statutory and Constitutional Theory*, 41 Wm. & Mary L. Rev. 743, 914, n. 598 (2000)).

Applying a slightly different approach from the analysis above, the Ninth Circuit has also recognized authority in the Bankruptcy Code and the legislative history of Section 523 for a bankruptcy court to enter a money judgment. Relying in part of the grant of equitable powers under Section 105 of the Bankruptcy Code, the Court in *Sasson v. Sokoloff (In re Sasson)*, 424 F.3d 864, 868 (9th Cir. 2005) *cert. denied*, 547 U.S. 1206 (2006), held that the Section 105 authority to "issue any order, process **or judgment** that is necessary or appropriate to carry out the provisions of . . . title [11]," *see* 11 U.S.C. §105(a) (emphasis added), made "clear, as we held in *Kennedy*, that bankruptcy courts have jurisdiction and power to enter money judgments in adjudicating nondischargeability adversary proceedings." *Id.* at 870.[16]

> **B.**   **Every Court of Appeals to consider the issue has held that a bankruptcy court has jurisdiction to liquidate and enter final judgment on a non-dischargeable debt, and the Supreme Court has implicitly affirmed such jurisdiction.**

Every one of the eight Federal Circuit Courts to address this jurisdictional question has held that a bankruptcy court has jurisdiction to liquidate and enter a money judgment against a debtor on a non-dischargeable debt.[17] In fact, the Supreme Court implicitly recognized this authority when it affirmed a bankruptcy court order that entered a money judgment against a debtor. *See De La Cruz v. Cohen (In re Cohen)*, 185 B.R. 171 (Bankr. D.N.J. 1994) (debt non-

---

[16] *See also* Haines, *Old Rules*, at 2 ("[I]t is not necessary to resort to a maxim about the scope of equity jurisdiction, or an argument for judicial economy, to find a jurisdictional basis for bankruptcy courts to enter judgments on nondischargeable debts, as such basis was intended to be encompassed by the language of the jurisdictional provision itself.").

[17] The eight Courts of Appeals are: *Porges v. Gruntal & Co. Inc. (In re Porges)*, 44 F.3d 159 (2d Cir. 1995) (holding bankruptcy court had jurisdiction to enter money judgment after determining validity of contested proof of claim); *Hall v. Davenport*, 76 F.3d 372 (4th Cir. 1996) (unpublished table decision); *Morrison v. W. Builders of Amarillo, Inc. (In re Morrison)*, 555 F.3d 473, 480-481 (5th Cir. 2009); *In re McLaren*, 3 F.3d at 965-66; *N.I.S. Corp. v. Hallahan (In re Hallahan)*, 936 F.2d 1496, 1508 (7th Cir. 1991); *Islamov v. Ungar (In re Ungar)*, 633 F.3d 675, 680 (8th Cir. 2011); *Sasson v. Sokoloff (In re Sasson)*, 424 F.3d 864, 869 (9th Cir. 2005) *cert. denied*, 547 U.S. 1206 (2006); *Johnson v. Riebesell (In re Riebesell)*, 586 F.3d 782, 793 (10th Cir. 2009).

dischargeable); 185 B.R. 180 (Bankr. D.N.J. 1995) (entering money judgment), *aff'd*, 191 B.R. 599 (D.N.J. 1996), *aff'd*, 106 F.3d 52 (3d Cir. 1997), *aff'd*, 523 U.S. 213 (1998). And although the Eleventh Circuit has not yet reviewed the issue, courts in the Eleventh Circuit to address the question have also found jurisdiction.[18]

In addition to the statutory bases discussed above, three reasons cited in support of jurisdiction to enter a monetary judgment in Section 523 litigation are: "1) determination of the debt lies within the equitable jurisdiction of the bankruptcy court; 2) the debtor by filing bankruptcy has consented to jurisdiction of the bankruptcy court over matters necessary to the determination of adversarial proceedings; and 3) judicial economy and efficiency require that the bankruptcy court be empowered to settle both the dischargeability of the debt and the amount of the monetary judgment." *Riebesell*, 586 F.3d at 793. Of these reasons, a debtor's consent to the equitable jurisdiction of the bankruptcy court is repeatedly highlighted:

> If it is acknowledged as beyond question that a complaint to determine dischargeability of a debt is exclusively within the equitable jurisdiction of the bankruptcy court, then it must follow that the bankruptcy court may also render a money judgment in an amount certain without the assistance of a jury. This is true not merely because equitable jurisdiction attaches to the entire cause of action but more importantly because it is impossible to separate the determination of dischargeability function from the function of fixing the amount of the nondischargeable debt.

*Kennedy*, 108 F.3d at 1017-18 (quoting *Snyder v. Devitt (In re Devitt)*, 126 B.R. 212, 215 (Bankr. D. Md. 1991)). The Eighth Circuit similarly held that a bankruptcy court has jurisdiction to enter a money judgment because "parties who voluntarily seek bankruptcy protection seek a

---

[18] *See, e.g., Rentrak Corp. v. Forbes (In re Forbes)*, 186 B.R. 764, 769 (Bankr. S.D. Fla. 1995) (Hyman, J.); *In re Blankenship*, 408 B.R at 863-64; *Pellegrino v. Metro Unlimited, Inc. and Dakhllalah (In re Dakhllalah)*, No. 6:09-AP-739-KSJ, 2010 WL 148457, at *1, 4 (Bankr. M.D. Fla. Jan. 7, 2010); *St. Paul Fire and Marine Ins. Co. v. Vinecki (In re Vinecki)*, 247 B.R. 327, 329 (Bankr. M.D. Fla. 2000); *Pioneer Credit Co. v. Detamore (In re Detamore)*, Adv. No. 05-6079, 2005 WL 6486098, at *3 (Bankr. N.D. Ga. Sept. 27, 2005).

remedy that is equitable in nature, and in entering the bankruptcy court, knowingly subject themselves to the broad equitable powers of the bankruptcy court." *In re Ungar*, 633 F.3d 675, 680 (8th Cir. 2011) (citing 11 U.S.C. § 105(a)). When a debtor consents to the equitable jurisdiction of a bankruptcy court, he "subjects himself to all the consequences that attach to an appearance . . . ." *In re McLaren*, 3 F.3d 958, 966 (6th Cir. 1993). Thus, "allowing the bankruptcy judge to settle both the nondischargeability of the debt and the amount of the money judgment accords with the rule generally followed by courts of equity, that having jurisdiction of the parties to controversies brought before them, they will decide *all* matters in dispute and decree complete relief." *Id*. at 966 (citing *Hallahan*, 936 F.2d at 1508).

### C.   The bankruptcy court's jurisdiction to liquidate and enter judgment on Neves' nondischargeable debts was unaffected by Neves' voluntary waiver of discharge.

Jurisdiction over Appellees' Section 523 claims attached upon the filing of the adversary complaint. Neves' waiver of discharge almost a year later could have no effect on the court's then existing jurisdiction to enter a money judgment. Simply put, jurisdiction of the bankruptcy court does not evaporate upon a voluntary waiver of discharge. Neves' waiver mooted only the dischargeability aspects of Appellees' Section 523 claims: the court must still liquidate Neves' non-dischargeable debts and enter judgment on them.

First, jurisdiction attaches at the time of filing. *See In re Goldcoast Partners, Inc.*, No. 97-10728, 1998 WL 34069487, at *2 (Bankr. S.D. Fla. June 15, 1998) (citing *Lemco Gypsum*, 910 F.2d 784, 790, n. 20 (11th Cir. 1990)). Subsequent unilateral action by the debtor cannot divest a court of that jurisdiction. The bankruptcy court thus properly rejected Neves' assertion

that his tactical waiver of discharge (timed to occur the day after he fled the jurisdiction to Brazil and the reach of any U.S. court) reduced this action to purely state law claims.[19]

As a matter of law, only the part of Appellees' claims that determines dischargeability of the debts was resolved, or mooted, by that waiver. Section 523 claims encompass two parts: (1) a claim on the underlying debt owed and the amount of the debt; and (2) a determination of whether that debt, if established, will be discharged. *See Drummond v. Freeland (In re Freeland)*, 360 B.R. 108, 129 (Bankr. D. Md. 2006) ("When a complaint to determine nondischargeability of debt is brought in the bankruptcy court prior to the entry of a judgment in a nonbankruptcy forum, the bankruptcy court has subject matter jurisdiction, not only to determine nondischargeability of the debt, but also to liquidate the amount of the debt and enter a nondischargeable judgment therefor."); *see also Adelson v. Smith (In re Smith)*, 389 B.R. 902 (Bankr. D. Nev. 2008) (same).

A general denial of discharge under Section 727 does not affect a bankruptcy court's jurisdiction to enter money judgments in Section 523 dischargeability litigation. In fact, as the bankruptcy court below recognized, under Eleventh Circuit precedent even dismissal of the bankruptcy case itself does not terminate bankruptcy court jurisdiction over then-pending adversary proceedings. *Morris*, 950 F.2d at 1535.[20] Logically, then, if full dismissal of the

---

[19] "I look at this as a two-count complaint and Count I has been resolved. Now, it's been resolved by your client's waiver of discharge, but let's say it had been resolved by my finding that the debt was nondischargeable." [Adv. ECF No. 331, Hrg. Tr. @ 21:23 – 22:2, April 27, 2011].

[20] In addition to *Morris*, the bankruptcy court also relied on *Porges*, 44 F.3d at 163, where the Second Circuit held that a bankruptcy court may retain jurisdiction to enter a money judgment on an allowed claim after dismissal of the underlying bankruptcy, particularly where the adversary proceeding "was subject to the jurisdiction of the bankruptcy court when it was filed." Neves does not question the bankruptcy court's retention of jurisdiction under *Morris* and *Porges*. Instead, he attempts to dispose of *Morris* and *Porges* by repeating the mantra that the bankruptcy

underlying bankruptcy case does not destroy jurisdiction, a mere waiver of discharge by the debtor cannot affect that jurisdiction either. *See SJM v. Korfonta (In re Korfonta)*, No. 08-16675-SSM, 2010 WL 4259396, at *3 (Bankr. E.D. Va. Oct. 26, 2010) ("[t]he court's authority to liquidate a non-dischargeable debt is unaffected by a denial of the debtor's discharge under Section 727"; "once equitable jurisdiction has been properly invoked [a bankruptcy court] will proceed to render a full and complete disposition of the controversy") (citing *Harris v. U.S. Fire Ins. Co.*, 162 B.R. 466, 468 (E.D. Va. 1994). *See also De La Cruz v. Cohen (In re Cohen)*, 185 B.R. 180 (D.N.J. 1995), *aff'd*, 523 U.S. 213 (1998).

The Supreme Court's decision in *De La Cruz* is particularly instructive on the issue of whether the bankruptcy court can liquidate and enter judgment following Neves' voluntary waiver. In *De La Cruz*, the bankruptcy court held a trial on the issue of non-dischargeability, and determined the debt at issue to be non-dischargeable. Under Neves' theory here, that determination would have ended the action. However, eighteen months after the trial on the dischargeability issue, and five months after issuing an opinion determining the debtor's obligation to the plaintiff to be nondischargeable, the bankruptcy court held a trial on the money damages issue, and entered a money judgment against the debtor three months later (seven months after the determination of nondischargeability). *See De La Cruz v. Cohen*, 185 B.R. 180, 181-82 (Bankr. D.N.J. 1995). The bankruptcy court's sequencing, identical to the one presented here, was left undisturbed through three levels of appeal, including by the Supreme Court. *See Cohen v. De La Cruz*, 523 U.S. 213 (1998)); *see also Pellegrino*, 2010 WL 148457, at *4 (On summary judgment, the Court entered a money judgment in favor of the plaintiffs, declared the judgment non-dischargeable, and denied the debtor's discharge under Section 727); *Belveal v.*

---

court did not have jurisdiction to begin with or that his waiver divested the court of jurisdiction. *See* In. Brief. pp. 19-21.

*West (In re West)*, No. 06-1022, 2007 WL 4563444, *5 (Bankr. W.D. Ky. Dec. 21, 2007) (court entered a money judgment on a non-dischargeable debt in favor of a creditor and denied the debtor's discharge under Section 727). In all these cases, the fact that the debtor was denied a discharge prior to liquidation of the underlying debt did not divest the court of jurisdiction nor prevent the court from later entering an enforceable money judgment.

<u>**Conclusion**</u>

The bankruptcy court correctly held that it has jurisdiction and authority to liquidate and enter final judgment against a debtor on non-dischargeable debts. Having had jurisdiction over Appellees' Section 523 claims at the time Appellees filed those claims, the bankruptcy court properly held that Neves' later waiver of discharge did not affect that jurisdiction. The timing of a resolution of dischargeability cannot determine a bankruptcy court's jurisdiction once it has attached. It is equally clear for the reasons set forth herein that the expressly narrow decision in *Stern* does not alter the conclusion of the eight Courts of Appeals that a bankruptcy court has jurisdiction to liquidate and enter a money judgment on a nondischargeable debt. Accordingly, the bankruptcy court's order should be affirmed. And even in the unlikely event that it does, the bankruptcy court may hear the matter and issue proposed finding of facts and conclusions of law to this Court.

Dated: January 12, 2012.                    Respectfully submitted,

| | |
|---|---|
| **HOLLAND & KNIGHT LLP**<br>*Counsel for Markwood Investments*<br>*Ltd. and Golden Dawn Corporation*<br>10 St. James Place,<br>11th Floor, Boston, Massachusetts 02116<br>Telephone: (617) 523-2700<br>Facsimile: (617) 523-6850<br>Email: john.monaghan@hklaw.com<br><br>By: /s John J. Monaghan<br>     John J. Monaghan, Esq.*<br>     Mass. Bar No. 546454<br><br>*Subject to *Pro Hac Vice* Admission. The Court admitted Mr. Monaghan to appear *pro hac vice* in the related matter, No. 11-22455-MC-MARRA (ECF No. 13). We will file a forthcoming motion in this action in an abundance of caution. | **HOLLAND & KNIGHT LLP**<br>*Counsel for Markwood Investments*<br>*Ltd. and Golden Dawn Corporation*<br>701 Brickell Avenue, 30th Floor<br>Miami, Florida 33131<br>Telephone: (305) 374-8500<br>Facsimile:  (305) 789-7799<br>E-mail: jose.casal@hklaw.com<br>E-mail: alex.gonzalez@hklaw.com<br>E-mail: brett.barfield@hklaw.com<br>E-mail: michael.rothenberg@hklaw.com<br><br>By:  /s Jose A. Casal<br>     Jose A. Casal, Esq.<br>     Florida Bar No. 767522<br>     Alex Gonzalez, Esq.<br>     Florida Bar No. 991200<br>     Brett A. Barfield, Esq.<br>     Florida Bar No. 195525<br>     Michael E. Rothenberg, Esq.<br>     Florida Bar No. 74411 |

## CERTIFICATE OF SERVICE

*I Hereby Certify* that on January 12, 2012, the foregoing was served via CM/ECF to all counsel of record:

    David Cimo, Esq.
    Michael Schuster, Esq.
    Genovese Joblove & Battista
    Bank of America Tower,
    100 S.E. 2nd Street, 44th Floor,
    Miami, Florida 33131
    ***Counsel for Neves***

**Via ECF Filing**

    s/ Michael E. Rothenberg
    Michael E. Rothenberg, Esq.

26