UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:11-cv-24505-KAM

---

IN RE: FABRIZIO DULCETTI NEVES

FABRIZIO DULCETTI NEVES,

Appellant,

vs.

MARKWOOD INVESTMENTS, LTD.
and GOLDEN DAWN CORPORATION,

Appellees.

---

## APPELLANT'S REPLY BRIEF

---

On Appeal From The United States Bankruptcy Court
Southern District of Florida, Miami Division

---

Paul J. Battista, Esq.
Florida Bar No. 884162
David C. Cimo, Esq.
Florida Bar No. 775400
Carlos E. Sardi, Esq.
Florida Bar No. 781401
Joshua R. Alhalel, Esq.
Florida Bar No. 0016320
Michael L. Schuster, Esq.
Florida Bar No. 0057119
GENOVESE JOBLOVE & BATTISTA, P.A.
*Counsel for Fabrizio Dulcetti Neves, Appellant*
100 Southeast Second Street, 44th Floor
Miami, Florida 33131
Tel: (305) 349-2300
Fax: (305) 349-2310

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ....................................................................................................... ii

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ............................................................................................................................ 5

   I.   SECTION 523 OF THE BANKRUPTCY CODE DOES NOT AUTHORIZE THE ENTRY OF A MONEY JUDGMENT ON PLAINTIFFS' STATE LAW CLAIMS AGAINST NEVES. ...................................................................................................... 5

   II.  THE BANKRUPTCY COURT DOES NOT HAVE A STATUTORY BASIS FOR EXERCISING SUBJECT MATTER JURISDICTION OVER THE ADVERSARY PROCEEDING. ........................................................................................................ 10

   III. THE ADVERSARY PROCEEDING MUST BE DISMISSED BECAUSE NO FEDERAL COURT HAS SUBJECT MATTER JURISDICTION.................................. 13

CONCLUSION........................................................................................................................ 15

CERTIFICATE OF SERVICE ................................................................................................ 16

# TABLE OF AUTHORITIES

Page(s)

## Cases

*A.M.S. Printing Corp. v. Wernick (In re Wernick),*
242 B.R. 194 (Bankr. S.D. Fla. 1999).................................................................. 13

*Celotex Corp. v. Edwards,*
514 U.S. 300 (1995)........................................................................................ 3, 11

*Conn. Nat'l Bank v. Germain,*
503 U.S. 249 (1992)............................................................................................ 6

*Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,*
447 U.S. 102 (1980)............................................................................................ 6

*Davila v. Delta Air Lines, Inc.,*
326 F.3d 1183, 1187 (11th Cir. 2003) ............................................................... 12

*De La Cruz v. Cohen.,*
523 U.S. 213 (1998)............................................................................................ 7

*Fidelity & Deposit Co. of Maryland v. Morris (In re Morris),*
950 F.2d 1531 (11th Cir. 1992) ......................................................................... 11

*In re Antonelli,* No. 09-1013,
2011 WL 5509494 (Bankr. D.R.I. Nov. 10, 2011) ............................................. 8

*In re Cambio,*
353 B.R. 30 (B.A.P. 1st Cir. 2004) ................................................................. 7, 13

*In re Dillon,*
194 B.R. 533 (Bankr. S.D. Fla. 1996)................................................................. 8

*In re Happy Hocker Pawn Shop, Inc.,*
212 Fed. Appx. 811 (11th Cir. 2006)................................................................. 11

*In re Morrison,*
555 F.3d 473 (5th Cir. 2009) ...................................................................... 8, 12, 13

*In re Thrall,*
196 B.R. 959 (Bankr. D. Colo. 1996) ................................................................. 6

*In the Matter of Fesco Plastics Corp, Inc.,*
996 F. 2d 152 (7th Cir. 1993) ............................................................................. 9

*Kokkoken v. Guardian Life Ins. Co. of Am.,*
511 U.S. 375 (1994)...................................................................................... 3, 13

*Norwest Bank Worthington v. Ahlers,*
485 U.S. 197 (1988)............................................................................................ 8

*Porges v. Gruntal & Co. Inc. (In re Porges),*
44 F.3d 159 (2d Cir. 1995).................................................................................. 11

*Robin v. United States,* 449 U.S. 424 (1981)................................................................. 6

*Solis-Ramirez v. United State Dep't of Justice,*
758 F.2d 1426 (11th Cir. 1985) .......................................................................... 5

*Stern v. Marshall,*
131 S. Ct. 2594 (2011).................................................................................... 1, 8

*U.S. Motors v. General Motors Europe,*
551 F.3d 420 (6th Cir. 2008) ............................................................................. 14

*United States v. Mount Sinai Medical Center of Fla., Inc.*,
   486 F.3d 1248 (11th Cir. 2007) ................................................................. 5
*United States v. Veal,*
   153 F.3d 1233 (11th Cir.1998) ................................................................. 5
*Valley Historic Ltd. P'ship v. Bank of New York*,
   486 F.3d 831 (4th Cir. 2007) ............................................................. 2, 10

## Statutes

11 U.S.C. § 105(a) ........................................................................................... 9
11 U.S.C. § 362 ............................................................................................... 14
28 U.S.C. § 1334 ....................................................................................... 3, 11

## Other Authorities

Ralph Brubaker, *Bankruptcy Court Jurisdiction to enter a Money Judgment on
   Nondischargeable Debt: Exposing Pacor's Deficiencies and the True Supplemental Nature of
   Third-Party "Related To" Bankruptcy Jurisdiction,* 29 No. 4 Bankruptcy Law Letter 1 (Apr.,
   2009) .................................................................................................... 12

## <u>INTRODUCTION</u>

Appellees' Response Brief (the "**Response**") is premised almost entirely on a fundamental misunderstanding of the issue before this Court on appeal.  The issue on appeal is not simply whether *Stern v. Marshall*, 131 S. Ct. 2594 (2011) ("*Stern*") affects the Bankruptcy Court's decision that it had subject matter jurisdiction over the Adversary Proceeding[1], but rather whether the Bankruptcy Court has subject matter jurisdiction at all.[2]  The answer to that latter question, however, must decided keeping in mind the Supreme Court's clear concerns about bankruptcy courts entering final judgments on purely state law claims.  Although the specific holding in *Stern* is purportedly "narrow," this appeal goes to the heart of the broader question raised by *Stern* – the extent to which a bankruptcy court's authority can exist compatibly with the requirements of Article III of the United States Constitution.  In other words, bankruptcy courts have always been courts of ***limited*** jurisdiction.  In light of *Stern*, the question now is, what are the limits of that jurisdiction?  That question is at the forefront of this appeal.

Neves submits that in action under Section 523 of the Bankruptcy Code, jurisdiction is limited to a determination as to dischargeability only, such that the Bankruptcy Court erred in determining that it had subject matter jurisdiction to enter a money judgment on Plaintiffs' state law claims after Neves voluntarily waived his discharge, thereby fully resolving the issue of dischargeability.  This argument is fully supported by the text of Section 523.  By its clear and unambiguous language, Section 523 simply does not authorize a bankruptcy court to liquidate and enter a money judgment in a nondischargability action.  Indeed, Section 523 is silent as to

---

[1]  Unless otherwise stated herein, defined terms shall have the same meaning ascribed to them in Appellant's Initial Brief.  [ECF No. 6].

[2]  To be sure, at the time Neves moved for leave to appeal, the Supreme Court had not yet decided *Stern v. Marshall*.  Moreover, the District Court granted leave to appeal not because of *Stern*, but rather "[i]n light of" *Stern*.  [Adv. Pro. ECF No. 422].

the entry of money judgments. Because the language of Section 523 is unambiguous, Plaintiffs' attempt to rely on legislative history contravenes a well-settled principle of statutory construction that, absent an ambiguity, a court should *not* look to the legislative history of a statute. Rather, a court's determination must start and end with the plain language of the statute. In that regard, Section 523 is clear. It does *not* provide for the entry of money judgments.

But, even if it did, the Bankruptcy Court does not have jurisdiction to enter a money judgment because the Adversary Proceeding is no longer an action under Section 523. Despite what Plaintiffs otherwise suggest, Plaintiffs' action under Section 523 was fully resolved when the Bankruptcy Court approved Neves' wavier of his discharge. All that remains now are Plaintiffs' purely state law claims against Neves. To be sure, in the operative Fourth Amended Complaint, Plaintiffs do not seek *any* relief available under Section 523. Instead, Plaintiffs assert purely state law claims against Neves for (1) fraud, (2) action on the consolidated note, (3) reestablishment of the second note, (4) reformation of second note, (5) action on the second note, and (6) action on the third note. [Adv. Pro. ECF No. 419]. These causes of action are clearly *not* claims under Section 523 of the Bankruptcy Code.

Notwithstanding this fact, Plaintiffs argue that the Bankruptcy Code has subject matter jurisdiction because jurisdiction purportedly attached at the time of filing. However, a bankruptcy court *must* "examine its subject matter jurisdiction at *every stage of the proceedings*." *See, e.g., Valley Historic Ltd. P'ship v. Bank of New York*, 486 F.3d 831, 838 (4th Cir. 2007) (emphasis added). While jurisdiction may have existed at the time the Adversary Proceeding was filed, an examination of that jurisdiction now plainly reveals that the Bankruptcy Court has *none*.

"Federal courts are courts of *limited* jurisdiction. They possess *only* that power authorized by Constitution and statute." *Kokkoken v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (emphasis added). A bankruptcy court's jurisdiction is even more restricted and is wholly "grounded in and limited by statute." *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995). In particular, 28 U.S.C. § 1334(b) grants jurisdiction to district courts and adjunct bankruptcy courts to entertain *only* three types of proceedings, those "arising under," "arising in a case under," or "related to" a case under the Bankruptcy Code. *See* 28 U.S.C. § 1334. The Adversary Proceeding simply does not meet any of these limited, statutory bases for the exercise subject matter jurisdiction.

*First*, the Adversary Proceeding does *not* arise under the Bankruptcy Code. As discussed above, and contrary to what Plaintiffs argue, the Adversary Proceeding is *not* an action under Section 523. The only claims that remain are purely *state law* claims, *none* of which are governed by or arise under the Bankruptcy Code. Therefore, the Adversary Proceeding does not invoke a substantive right created by bankruptcy law and could arise outside of bankruptcy law. *Second*, Plaintiffs do not, and indeed cannot, argue that the Adversary Proceeding arises in a case under the Bankruptcy Code. *Third*, the Adversary Proceeding does *not* relate to a case under the Bankruptcy Code because it will *not* affect Neves' bankruptcy estate or the administration of the same. To be sure, the only relief Plaintiffs seek is the entry of a money judgment against Neves, *not* the bankruptcy estate, due to alleged wrongdoing by *Neves*, individually. Plaintiffs' argument that the Adversary Proceeding is "related to" his bankruptcy case because it will allegedly have *res judicata* effect completely ignores the fact that Plaintiffs' claims against the estate are wholly separate and distinct from Plaintiffs' state law claims against *Neves* in the Adversary Proceeding. Because the party-in-interest in the claim objection (*i.e.*, the estate) is

3

different from the party-in-interest in the Adversary Proceeding (*i.e.*, Neves), a determination in one of those proceedings will **not** have *res judicata* effect on the other.   Simply put, the Adversary Proceeding has **nothing** to do with Neves' bankruptcy case or the administration of Neves' bankruptcy estate, such that the Bankruptcy Court could have "related to" jurisdiction. Therefore, there is **no** statutory basis for the Bankruptcy Court to exercise subject matter jurisdiction.

Because the Bankruptcy Court does not have subject matter jurisdiction, the Adversary Proceeding must, as this Court previously recognized, be dismissed in its entirety.   [Adv. Pro. ECF No. 422] (noting that a resolution of the appeal favorable to Neves "would dismiss the adversary proceeding entirely").   Indeed, there is **no** federal court that has subject matter jurisdiction over the Adversary Proceeding.   Plaintiffs' suggestion that the Bankruptcy Court could still make findings of fact and conclusions of law to submit to the District Court is constitutionally improper.   Absent a basis for exercising subject matter jurisdiction, the Bankruptcy Court would not have any basis to hear the Adversary Proceeding *at all*.   Likewise, there is no constitutional or statutory basis for a federal district court to have jurisdiction.   There are **no** federal questions at issue in the Adversary Proceeding; only *state* law claims.   Nor is there diversity jurisdiction.   The Adversary Proceeding is predicated upon a dispute between foreign citizens, none of whom reside in the United States,[3] over a joint venture in Brazil and an alleged bad investment Panama.[4]   There is therefore no Constitutional or statutory authority for **any**

---

[3] Neves is a Brazilian citizen who resides in Brazil.  Plaintiff  Markwood Investments Ltd.  is a British Virgin Islands corporation with a principal place of business in Rome, Italy, and Plaintiff Golden Dawn Corporation is a Panamanian corporation with its principal place of business in Rome, Italy.  [Adv. Pro. ECF No. 419].

[4] A lack of subject matter jurisdiction is the precise reason why the action Plaintiffs filed against Neves in federal district court prior to the Petition Date was dismissed, with the district court vacating the judgment

federal court (district or bankruptcy) to exercise subject matter jurisdiction over Plaintiffs' state law claims, and to do so would violate Article III, Section 2 of the United States Constitution.

Accordingly, for the reasons discussed herein and in Appellant's Initial Brief, the Bankruptcy Court erred in denying Neves' motion to dismiss for lack of subject matter jurisdiction.

## ARGUMENT

### I.   SECTION 523 OF THE BANKRUPTCY CODE DOES NOT AUTHORIZE THE ENTRY OF A MONEY JUDGMENT ON PLAINTIFFS' STATE LAW CLAIMS AGAINST NEVES.

The Bankruptcy Court erred in finding that it could enter a money judgment against Neves because Section 523 of the Bankruptcy Code simply does not provide for the entry of money judgments.  In their Response, Plaintiffs argue that, notwithstanding this Congressional silence, the legislative history of the statute supports a finding that the Bankruptcy Court has jurisdiction to enter a money judgment on Plaintiffs' state law claims against Neves.  In asking this Court to consider the legislative history of Section 523, however, Plaintiffs ignore bedrock principles of statutory construction.  It is a well established canon of statutory construction that courts do **not** rely on legislative history unless the statute at issue is ambiguous.  *See, e.g. United States v. Veal,* 153 F.3d 1233, 1245 (11th Cir.1998) ("Review of legislative history is unnecessary 'unless a statute is inescapably ambiguous.'") (quoting *Solis-Ramirez v. United State Dep't of Justice*, 758 F.2d 1426, 1430 (11th Cir. 1985); *United States v. Mount Sinai Medical Center of Fla., Inc.,* 486 F.3d 1248, 1251 (11th Cir. 2007) ("district court improperly relied on legislative history without first determining whether the language of the statute was ambiguous").  Indeed, "the starting point for interpreting a statute is the language of the statute

against Neves.  In fact, it was Plaintiffs' improper attempt to levy on that void judgment that led Neves to file for bankruptcy protection in the first place.

itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108 (1980). In other words, when the words of a statute are unambiguous, "'judicial inquiry is complete.'" *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992) (quoting *Robin v. United States*, 449 U.S. 424, 430 (1981)).

In this case, it would be improper for the Court to rely on the legislative history of Section 523 because the statute is clearly ***not*** ambiguous. By its plain language, Section 523 does not authorize bankruptcy courts to enter money judgments. Indeed, Section 523 speaks solely to the determination of dischargeability. It makes ***no*** mention of entering a money judgment against the debtor. It is clear that Congress specifically chose not to give this authority to bankruptcy courts both as indicated in the plain language of Section 523, and by the omission of language included in the former Bankruptcy Act, but excluded from the Bankruptcy Code. Indeed, "[t]he language of § 523 and the rules implementing it stand in stark contrast to the Act's directives in § 17(c)." *In re Thrall,* 196 B.R. 959, 964 (Bankr. D. Colo. 1996).[5] Under the Bankruptcy Code itself, "Congress empowered the bankruptcy court to determine the dischargeability of a debt but did not include authorization to 'determine the remaining issues, render judgment and make all orders necessary for the enforcement thereof'" as it did within the language of its predecessor statute, the Bankruptcy Act at Section 17(c)(3). *Id.* Therefore, because Congress did not include an explicit authorization to enter money judgments in the new Bankruptcy Code (but did in the former Bankruptcy Act), Congress clearly intended to eliminate

---

[5] In any event, as the court in *In re Thrall* found, there is "nothing in the legislative history which would indicate Congress' intent to continue the practice of entering money judgments on nondischargeable debts. Indeed, fundamental changes in bankruptcy policy reflected in the Code help explain why the language of § 17(c) of the Act was not included in the Code or Rules." 196 B.R. 959, 965.

a bankruptcy court's jurisdiction to enter money judgments.[6]   For this reason alone, the Bankruptcy Court erred in finding that it had jurisdiction to enter a money judgment against Neves on Plaintiffs' purely state law claims.

Notwithstanding the fact that Section 523 clearly does not provide for the entry of money judgments, certain Circuit Courts of Appeals have nevertheless found jurisdiction to enter money judgments.   Plaintiffs would have this Court believe that a bankruptcy court's jurisdiction to enter a money judgment under Section 523 is well settled.   It is not.   Not only do those courts that have found jurisdiction ignore the plain language of Section 523, but as discussed in more detail in Appellant's Initial Brief, various courts, including the First Circuit, have correctly concluded that bankruptcy courts do not have the power to enter money judgments on nondischargeable debts.   *See, e.g., In re Cambio*, 353 B.R. 30, 33-35 (B.A.P. 1st Cir. 2004); (Brief at pp. 10-12).   Moreover, this issue has never been decided by either the Eleventh Circuit Court of Appeals or the United States Supreme Court.   Despite what Plaintiffs otherwise suggest, this issue was not "implicitly" decided by the Supreme Court in *De La Cruz v. Cohen*., 523 U.S. 213 (1998).   To be sure, the issue on appeal in that case was ***not*** whether the bankruptcy court had the ability to enter a money judgment, but rather whether treble damages on account of a debtor's fraud could be discharged.   There is simply nothing in the Supreme Court's opinion in *De La Cruz* to suggest that the issue of jurisdiction was ever raised in that case.   Therefore,

---

[6] Plaintiffs argue that the Bankruptcy Court has jurisdiction to enter a money judgment because the Federal Rules of Bankruptcy Procedure adopted Rule 54 of the Federal Rules of Civil Procedure, which speaks to judgments generally.   However, neither of those Rules provide for the entry of money judgments in dischargeability action under Section 523 of the Bankruptcy Code.   Moreover, the adoption of Rule 54 adds nothing to Plaintiffs' argument since there is no question that bankruptcy courts have jurisdiction to enter judgments in certain instances such that the adoption of Rule 54 makes perfect sense. However, a money judgment in an action under Section 523 is ***not*** one of instances.

Plaintiffs' suggestion that the Supreme Court somehow ruled on an issue that was not before it on appeal lacks all merit.

Given this lack of binding precedent, coupled with the fact that the non-binding decisions relied upon by Plaintiffs were decided **before** the Supreme Court's decision in *Stern*, this Court should conduct its own substantive analysis to determine whether Section 523 provides for the entry of judgments, as well as whether those earlier decisions were wrongly decided in light of Section 523's plain language and the clear concerns express by the Supreme Court in *Stern*. Indeed, at least one bankruptcy court has questioned whether bankruptcy courts now have the power to render money judgments in a non-dischargeability action in light of *Stern*.  *In re Antonelli*, No. 09-1013, 2011 WL 5509494, *1 (Bankr. D.R.I. Nov. 10, 2011) (the decision in *Stern* "has cast a much dimmer light on the power of non-Article III courts to render money judgments in dischargeability litigation").

Further, the cases cited by Plaintiffs improperly allowed equitable considerations such as judicial economy and pragmatism to trump Section 523's plain language.[7]  As the United States Supreme Court has made clear, however, a bankruptcy court may exercise its equitable powers **only** as a means to fulfill a **specific Bankruptcy Code provision**.  *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988); *In re Dillon*, 194 B.R. 533, 536 (Bankr. S.D. Fla. 1996) (Cristol, J.) ("the exercise of [a bankruptcy court's] equitable powers **must be strictly confined within the prescribed limits of the bankruptcy statutes**") (emphasis added).  In other words, "when a specific Code section addresses an issue, the court **may not** employ its equitable powers

---

[7] Despite concluding that jurisdiction existed to enter money judgments, the Fifth Circuit Court of Appeals in *In re Morrison* expressly acknowledged that, where courts have found jurisdiction, "[t]heir reasoning, while pragmatic, stands in tension with the predominant theory of bankruptcy court jurisdiction." 555 F.3d at 478.

to achieve a result **not contemplated by the Code**." *In the Matter of Fesco Plastics Corp, Inc.,* 996 F. 2d 152, 154-55 (7th Cir. 1993).

The cases relied upon by Plaintiffs, and the Bankruptcy Court in this case, clearly violated this well-settled limitation on a bankruptcy court's equitable powers. Because the entry of money judgments is not contemplated by the plain language of Section 523, equitable considerations and Section 105(a) of the Bankruptcy Code simply cannot be used to create jurisdiction not otherwise provided by a specific Bankruptcy Code provision, here, Section 523.[8] But, even if they could, the equitable considerations relied upon by those courts do **not** support a finding of jurisdiction here. As Plaintiffs acknowledge in their Response, one of the primary equitable considerations repeatedly highlighted is the fact that "it is impossible to separate the determination of dischargeability function from the function of fixing the amount of the nondischargeable debt." (Response at p. 21). That purportedly impossible separation need **not** be made much more here because the Bankruptcy Court does not have to make **any** determination as to dischargeability in light of Neves' waiver of his discharge. Thus, there is no logical or practical reason for the Bankruptcy Court to exercise its equitable powers solely to enter a money judgment against Neves on Plaintiffs' state law claims. Therefore, equitable considerations do not, and indeed cannot, support a finding of jurisdiction here.

In short, because Section 523 of the Bankruptcy Codes does **not** provide for the entry of money judgments, bankruptcy courts simply do not have jurisdiction, equitable or otherwise, to enter money judgments on purely state law claims. Therefore, the Bankruptcy Court erred in

---

[8] Likewise, the argument relied upon by those Circuit Courts of Appeals and Plaintiffs that bankruptcy courts can enter money judgments because, by filing for bankruptcy, a debtor "subjects himself to all the consequences that attach to an appearance," (Response at p. 22), misapplies the law and runs afoul of the clear, jurisdictional limits of bankruptcy courts. Indeed, stretched to its limits, this argument would swallow whole the rule that bankruptcy courts are courts of *limited* jurisdiction, since almost any action could arguably be considered a "consequence[] that attaches to an appearance."

finding that it had jurisdiction to enter a money judgment against Neves under Section 523 of the Bankruptcy Code.

## II.     THE BANKRUPTCY COURT DOES NOT HAVE A STATUTORY BASIS FOR EXERCISING SUBJECT MATTER JURISDICTION OVER THE ADVERSARY PROCEEDING.

Even if Section 523 of the Bankruptcy Code provided for the entry of money judgments (which it does not), the Bankruptcy Court still would not have subject matter jurisdiction to enter a money judgment because, despite what Plaintiffs otherwise argue, the Adversary Proceeding is no longer an action under Section 523. All of the issues under Section 523 were fully and conclusively resolved when Neves voluntarily waived his discharge. All that remains now are Plaintiffs' purely state law claims against Neves. This fact is plainly demonstrated by the claims Plaintiffs assert against Neves in the operative Fourth Amended Complaint. [Adv. Pro. ECF No. 419]. To be sure, in that Complaint, Plaintiffs bring claims against Neves for (1) fraud, (2) action on the consolidated note, (3) reestablishment of the second note, (4) reformation of second note, (5) action on the second note, and (6) action on the third note. [*Id.*]. Clearly, these are all state law claims, *none* of which arise under Section 523 of the Bankruptcy Code.

Notwithstanding this undeniable fact, Plaintiffs argue that the Bankruptcy Court nevertheless has subject matter jurisdiction since jurisdiction purportedly attached at the time of filing. However, Plaintiffs miss the boat as subject matter is fluid and you can have it at one stage of the proceedings, and not at another. In this regard, a bankruptcy court *has an absolute duty* to "examine its subject matter jurisdiction at *every stage of the proceedings*." *See, e.g., Valley Historic Ltd. P'ship v. Bank of New York*, 486 F.3d 831, 838 (4th Cir. 2007) (emphasis added). While subject matter jurisdiction may have existed at the time the Adversary Proceeding

10

was filed, an examination of that jurisdiction now plainly reveals that the Bankruptcy Court does **not** have subject matter jurisdiction in light of Neves' court-approved waiver of his discharge.

A bankruptcy court's jurisdiction is wholly "grounded in and limited by statute." *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995).  Specifically, 28 U.S.C. § 1334(b) grants limited jurisdiction to district courts and adjunct bankruptcy courts to entertain *only* those proceedings "arising under," "arising in a case under," or "related to" a case under the Bankruptcy Code.  *See* 28 U.S.C. § 1334.  If a case does not fit within one of these three statutorily enumerated categories, the bankruptcy court does **not** have subject matter jurisdiction.  *See, e.g., In re Happy Hocker Pawn Shop, Inc.*, 212 Fed. Appx. 811 (11th Cir. 2006).

In this case, the Adversary Proceeding simply does not meet any of the limited, statutory bases for the Bankruptcy Court to exercise subject matter jurisdiction.  *First*, the Adversary Proceeding does not arise under the Bankruptcy Code.  As discussed above, the Adversary Proceeding is longer an action under Section 523 of the Bankruptcy Code in light of Neves' waiver of his discharge.[9]  Instead, all of the remaining issues are governed by and arise under state law, not the Bankruptcy Code.  Simply put, the Adversary Proceeding does not invoke a substantive right created by bankruptcy law and could arise outside of bankruptcy law.  Therefore, it does not arise under the Bankruptcy Code.  *See, e.g., Happy Hocker*, 212 Fed. Appx. at 817.  *Second*, Plaintiffs do not, and indeed cannot, argue that the Adversary Proceeding arises in a case under the Bankruptcy Code.

---

[9] As discussed in more detail in Appellant's Initial Brief, Plaintiffs' and the Bankruptcy Court's reliance on *Fidelity & Deposit Co. of Maryland v. Morris (In re Morris)*, 950 F.2d 1531 (11th Cir. 1992), and *Porges v. Gruntal & Co. Inc. (In re Porges)*, 44 F.3d 159 (2d Cir. 1995), is misplaced.  Legally and factually, neither of those cases support a finding of jurisdiction here.  Plaintiffs' suggestion that Neves "does not question the bankruptcy court's retention of jurisdiction under *Morris* and *Porges*," (Response at p. 23, n.20) is belied by the arguments raised by Neves in his Initial Brief.  (*See* Brief at pp. 19-21).

*Third, and finally*, the Bankruptcy Court does not have "related to" subject matter jurisdiction. Plaintiffs' argument that the Adversary Proceeding is "related to" his bankruptcy case because it will have *res judicata* effect blurs the distinction between Neves and Neves' bankruptcy estate. Plaintiffs' claims against the estate are separate from Plaintiffs' state law claims against *Neves* in the Adversary Proceeding. To be sure, Neves is the party-in-interest in the Adversary Proceeding, the estate is ***not***. *See* Ralph Brubaker, *Bankruptcy Court Jurisdiction to enter a Money Judgment on a Nondischargeable Debt: Exposing Pacor's Deficiencies and the True Supplemental Nature of Third-Party "Related To" Bankruptcy Jurisdiction,* 29 No. 4 Bankruptcy Law Letter 1 (April, 2009) ("[T]he estate is not a party to the dischargeability proceeding . . . the estate has no interest in the outcome of the creditor's claim against the debtor, as the estate would not be bound by any money judgment against the debtor and could fully relitigate the creditor's claim against the estate in claims objection proceedings.") [ECF No. 7 at A-11]. Therefore, the outcome of the Adversary Proceeding will not have *res judicata* effect. *See, e.g., Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1187 (11th Cir. 2003) (doctrine of *res judicata* requires, among other things, that the parties were identical in both suits).

In fact, the Adversary Proceeding will ***not*** have any affect on Neves' bankruptcy estate. The only relief Plaintiffs seek is the entry of a money judgment against Neves, ***not*** the bankruptcy estate, due to alleged wrongdoing by *Neves* in his individual capacity. As the court observed in *In re Morrison*, one of the principal cases relied upon by Plaintiffs,

> The rendition of a monetary judgment in favor of the creditor on that debt . . . ***is not clearly related to the bankruptcy case or administration of the debtor's estate***. Indeed, that portion of the judgment has, in the usual case, no bearing on the bankruptcy case because it requires the debtor to pay a single debt outside of, apart from, and even after the completion of bankruptcy, and it frees the creditor thereafter from limiting its collection efforts to those afforded by the bankruptcy system.

555 F.3d 473, 479 (5th Cir. 2009) (emphasis added); *see also A.M.S. Printing Corp. v. Wernick (In re Wernick)*, 242 B.R. 194, 197-98 (Bankr. S.D. Fla. 1999) ("the dispute over collection of the debt is not related to the bankruptcy estate"); *accord In re Cambio*, 353 B.R. at 35 ("because the only effect of any money judgment against the debtor would be to enhance the creditor's future ability to collect the debt from the debtor's postbankruptcy income and assets and with no effect at all on property of the bankruptcy estate or creditors' claims against the estate, we would conclude that the claim is not 'related to' the bankruptcy case").   Therefore, the Adversary Proceeding is *not* related to Neves' bankruptcy case.

Accordingly, there is no *statutory* basis for the Bankruptcy Court to exercise subject matter jurisdiction and enter a money judgment against Neves on Plaintiffs' non-bankruptcy law claims following Neves' voluntary waiver of his discharge.

## III.   THE ADVERSARY PROCEEDING MUST BE DISMISSED BECAUSE NO FEDERAL COURT HAS SUBJECT MATTER JURISDICTION.

Finally, because the Bankruptcy Court clearly does not have subject matter jurisdiction, this Court must "dismiss the adversary proceeding entirely."   [Adv. Pro. ECF No. 422]. Plaintiffs' suggestion that, under *Stern*, the Bankruptcy Court could still make findings of fact and conclusions of law to submit to the District Court is constitutionally improper.  Where, as here, a bankruptcy court does not have a *statutory* basis for exercising subject matter jurisdiction, the court would *not* have jurisdiction to hear the case *at all*.  The same holds true of a federal district court.  Federal district courts, like bankruptcy courts, are "courts of *limited* jurisdiction" that "posses *only* that power authorized by Constitution and statute." *Kokkoken v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (emphasis added); *see* U.S. Const. art. III, § 2.

In this case, there is *no* statutory or Constitutional basis for a federal district court to exercise subject matter jurisdiction over the Adversary Proceeding.   There are *no* federal

13

questions at issue in the Adversary Proceeding; only *state* law claims.  Moreover, the Adversary Proceeding is predicated upon a dispute between foreign citizens, none of whom reside in the United States (*see, supra,* n. 3) over a joint venture in Brazil and an alleged bad investment Panama.  There is thus also no diversity jurisdiction.  *See, e.g. U.S. Motors v. General Motors Europe*, 551 F.3d 420, 423 (6th Cir. 2008) (no diversity jurisdiction where there are foreign parties on each side of the dispute).  Indeed, it is precisely because there was no subject matter jurisdiction that the action Plaintiffs previously filed against Neves in federal district court in 2008 was dismissed, with the void judgment against Neves being vacated.  And, it was Plaintiffs' improper attempt to levy on that void judgment that led to Neves filing for bankruptcy in the first place.[10]

In short, there is no Constitutional or statutory authority for ***any*** federal court (district or bankruptcy) to exercise subject matter jurisdiction over the Adversary Proceeding, and to do so would violate Article III, Section 2 of the United States Constitution.  If Plaintiffs wish to pursue their state law claims against Neves, they have been, and remain, free to do so in a court *with* subject matter jurisdiction.[11]  The federal courts, however, are ***not*** the proper forum for this dispute.  Therefore, the Adversary Proceeding should be dismissed entirely for lack of subject matter jurisdiction.

---

[10] In a desperate attempt to appeal to this Court's equities, Plaintiffs' suggest that Neves fled the United States for Brazil.  In truth, Neves did ***not*** flee the country.  Rather, he was forced to leave after his investor visa expired and he could not renew it as a result of the bankruptcy caused solely by Plaintiffs' improper levy on the void judgment.  Therefore, Neves could not legally remain in the United States and he left the country in order to comply with U.S. law.

[11] Plaintiffs have not been forced to litigate their claims against Neves in the Bankruptcy Court.  First, there is no reason why Plaintiffs could not have brought an action against Neves in state court prior to the Petition Date.  Indeed, it was *Plaintiffs'* mistake to file suit in a federal court (as opposed to a state court) that did not have jurisdiction.  Moreover, once Neves voluntarily waived his discharge, Plaintiffs were then free to initiate an action against Neves in state court.  S*ee* 11 U.S.C. § 362(c)(2)(C).  Plaintiffs, however, have chosen not to do so, and their suggestion that a dismissal of the Adversary Proceeding would leave them without recourse is specious, at best, and cannot be used as a basis to create federal subject matter jurisdiction where none otherwise exists by statute.

## CONCLUSION

For all the foregoing reasons, and for the reasons discussed in Neves' Initial Brief, the Bankruptcy Court erred in denying Neves' motion to dismiss for lack of subject matter jurisdiction.  Neves therefore respectfully requests that this Court reverse the Bankruptcy Court's Order Denying Motion to Dismiss and dismiss the Adversary Proceeding for lack of subject matter jurisdiction.

Respectfully submitted on this <u>26th</u> day of January, 2012.

GENOVESE JOBLOVE & BATTISTA, P.A.
*Counsel for Fabrizio Dulcetti Neves, Appellant*
100 Southeast Second Street, 44th Floor
Miami, Florida 33131
Tel.: (305) 349-2300
Fax: (305) 349-2310

By _/s/ David C. Cimo_____
    Paul J. Battista, Esq.
    Florida Bar No. 884162
    Email: pbattista@gjb-law.com
    David C. Cimo, Esq.
    Florida Bar No. 775400
    Email: dcimo@gjb-law.com
    Carlos E. Sardi, Esq.
    Florida Bar No. 781401
    Email: csardi@gjb-law.com
    Joshua R. Alhalel, Esq.
    Florida Bar No. 0016320
    Email: jalhalel@gjb-law.com
    Michael L. Schuster, Esq.
    Florida Bar No. 57119
    Email: mschuster@gjb-law.com

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this <u>26th</u> day of January, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record and parties identified on the Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

   /s/ David C. Cimo
David C. Cimo

16

<u>**SERVICE LIST**</u>

**NEVES v. MARKWOOD INVESTMENTS, LTD., et al.
CASE NO. 1:11-CV-24505-KMM**

<u>**VIA CM/ECF**</u>

Jose A. Casal, Esq.
Michael E. Rothenberg, Esq.
Holland & Knight LLP
701 Brickell Avenue, Suite 3000
Miami, Florida 33131
Tel: (305) 789-7401
Fax: (305) 789-7799
Email: jose.casal@hklaw.com
Email: michael.rothenberg@hklaw.com
*Counsel for Appellees*

John J. Mohaghan, Esq.
Holland & Knight LLP
10 St. James Place, 11th Floor
Boston, Massachusetts 02116
Tel: (617) 523-2700
Fax: (617) 523-6850
Email: john.monaghan@hklaw.com
*Counsel for Appellees*